**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENTA SETTLES, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:20-cv-01288 |
| | ) | |
| v. | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| MICHAEL MALAK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS MICHAEL MALAK,
ROBERT PITTS, BRIAN REGOVICH, ROB JARZEMBAK, WILLIAM GALL, TODD
VARGO, AND THE CITY OF GARFIELD HEIGHTS, AND COUNTERCLAIM OF
<u>DEFENDANTS MICHAEL MALAK AND ROBERT PITTS</u>**

Defendants, Patrolman Michael Malak ("Ptl. Malak"), Patrolman Robert Pitts ("Ptl. Pitts"), Patrolman Brian Regovich ("Ptl. Regovich"), Patrolman Rob Jarzembak ("Ptl. Jarzembak"), Sergeant William Gall ("Sgt. Gall"), Lieutenant Todd Vargo ("Lt. Vargo"), and the City of Garfield Heights ("Garfield Heights"), by and though undersigned counsel, hereby submit their Answer and Affirmative Defenses, as well as the Counterclaim of Ptl. Malak and Ptl. Pitts, in response to the Complaint of Plaintiff Kenta Settles. Defendants deny each and every statement, allegation, and averment contained in the Complaint except and to the extent specifically admitted or qualified below.

**ANSWER TO PLAINTIFF'S COMPLAINT**

1.      Paragraph 1 of Plaintiff's Complaint does not contain any allegation of fact to which an admission or denial is required. To the extent a response is required, Defendants deny the allegations in Paragraph 1 of Plaintiff's Complaint.

2.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 of Plaintiff's Complaint, and therefore deny the same.

3.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 3 of Plaintiff's Complaint, and therefore deny the same.

4.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4 of Plaintiff's Complaint, and therefore deny the same.

5.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5 of Plaintiff's Complaint, and therefore deny the same.

6.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 6 of Plaintiff's Complaint, and therefore deny the same.

7.      In response to the allegations in Paragraph 7 of Plaintiff's Complaint, Defendants admit only that the driver informed the Garfield Heights Police Department ("GHPD") that Plaintiff stood behind his car for a minute "to see what I looked like through my mirror, like to see … if he could handle me." The driver also reported that after standing behind his car for a minute, Plaintiff rushed up to the side of the vehicle and tried to rip open the passenger side door without warning or explanation. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 7 of Plaintiff's Complaint, and therefore deny the same.

8.      In response to the allegations in Paragraph 8 of Plaintiff's Complaint, Defendants admit only that the driver reported to the GHPD that Plaintiff rushed up to the side of his car and tried to rip open his passenger side door, to which the driver responded by laying on his horn. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 8 of Plaintiff's Complaint, and therefore deny the same.

9.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 9 of Plaintiff's Complaint, and therefore deny the same.

10.     In response to the allegations in Paragraph 10 of Plaintiff's Complaint, Defendants admit that at the time of Plaintiff's encounter with the GHPD on January 23, 2020, Plaintiff was walking on Turney Road in the City of Garfield Heights. In response to the remaining allegations in Paragraph 10 of Plaintiff's Complaint, Defendants state that the body camera videos attached to Plaintiff's Complaint as **Exhibit 1** (ECF Doc #: 3) (hereinafter, "Bodycam Videos") speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos.

11.     To the extent Paragraph 11 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Ptl. Malak ordered Plaintiff to stop. Defendants deny all remaining allegations in Paragraph 11 of Plaintiff's Complaint.

12.     To the extent Paragraph 12 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Plaintiff stopped walking away from Ptl. Malak after Ptl. Malak repeatedly ordered Plaintiff to stop. Defendants deny all remaining allegations in Paragraph 12 of Plaintiff's Complaint.

13.     To the extent Paragraph 13 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Ptl. Malak had probable cause to arrest Plaintiff based on the eyewitness report provided to the GHPD identifying Settles as the perpetrator of what the complainant reasonably believed to be an attempted carjacking,

trespass, robbery, menacing, and/or assault. At very least, Ptl. Malak had reasonable suspicion to conduct an investigatory stop. Accordingly, Ptl. Malak escorted Settles to the hood of his police cruiser for a pat-down. Defendants deny all remaining allegations in Paragraph 13 of Plaintiff's Complaint.

14.     To the extent Paragraph 14 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Ptl. Pitts is a GHPD officer and that he acted properly and reasonably in holding on to Plaintiff's right hand and wrist to prevent Plaintiff from accessing any concealed weapons during Ptl. Malak's attempted pat-down. Defendants deny all remaining allegations in Paragraph 14 of Plaintiff's Complaint.

15.     To the extent Paragraph 15 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that as Ptl. Malak attempted to spread Plaintiff's legs for a pat-down, Plaintiff tensed his body, clenched his right fist, raised his right hand, and began to physically resist the officers. At that point, Ptl. Pitts told Plaintiff to put his hands behind his back and attempted to maneuver Plaintiff's right arm behind his back. Plaintiff did not comply with Ptl. Pitts' command and continued to resist.  Defendants deny all remaining allegations in Paragraph 15 of Plaintiff's Complaint.

16.     To the extent Paragraph 16 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Plaintiff actively resisted

4

Ptl. Malak and Ptl. Pitts after Ptl. Pitts ordered Plaintiff to put his hands behind his back. Due to Plaintiff's continued, active resistance, Ptl. Pitts escorted Plaintiff to the ground. Defendants deny all remaining allegations in Paragraph 16 of Plaintiff's Complaint.

17.    To the extent Paragraph 17 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Ptl. Pitts acted reasonably in striking Plaintiff in the only areas that were exposed to Ptl. Pitts – Plaintiff's upper left shoulder, back, and head area – in response to Plaintiff's active resistance and in an attempt to stun and district Plaintiff so that he would not reach for any concealed weapon(s). In light of the circumstances and what was known to Ptl. Pitts at the time, Ptl. Pitts acted reasonably in using physical force in an attempt to gain control of the situation and enforce compliance with officers' legitimate commands for Plaintiff to place his hands behind his back and stop resisting. Defendants deny all remaining allegations in Paragraph 17 of Plaintiff's Complaint.

18.    To the extent Paragraph 18 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Ptl. Malak drew his Taser and shot it in dart mode at Plaintiff's back after Plaintiff repeatedly refused commands to place his hands behind his back and continued to physically struggle with and resist the officers. Prior to deploying his Taser, Ptl. Malak repeatedly commanded Plaintiff to put his hands behind his back and warned "you're going to get tased." Defendants deny all remaining allegations in Paragraph 18 of Plaintiff's Complaint.

19.     To the extent Paragraph 19 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Ptl. Pitts deployed his Taser against Plaintiff in dart mode after the verbal commands and physical strikes administered by Ptl. Pitts failed to bring an end to Plaintiff's active resistance. Defendants deny all remaining allegations in Paragraph 19 of Plaintiff's Complaint.

20.     To the extent Paragraph 20 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that the Taser deployments had little (if any) effect on Plaintiff, since he continued to resist even after being tased. Defendants deny all remaining allegations in Paragraph 20 of Plaintiff's Complaint.

21.     To the extent Paragraph 21 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Ptl. Malak and Ptl. Pitts continued to use reasonable force to gain control of Plaintiff and obtain compliance with their repeated commands for Plaintiff to stop resisting and to place his hands behind his back. Defendants deny all remaining allegations in Paragraph 21 of Plaintiff's Complaint.

22.     To the extent Paragraph 22 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Ptl. Pitts deployed his Taser

in drive stun mode, which once again had little to no apparent effect on Plaintiff. Defendants deny all remaining allegations in Paragraph 22 of Plaintiff's Complaint.

23.    To the extent Paragraph 23 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Plaintiff punched Ptl. Malak in the face, fracturing Ptl. Malak's nose and jawbone and causing Ptl. Malak to bleed profusely. Defendants deny all remaining allegations in Paragraph 23 of Plaintiff's Complaint.

24.    To the extent Paragraph 24 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Plaintiff continued to overpower Ptl. Pitts and Ptl. Malak such that Lt. Vargo was required to apply his weight to Plaintiff's legs in an effort to subdue him. In doing so, Lt. Vargo acted reasonably under the circumstances. Defendants deny all remaining allegations in Paragraph 24 of Plaintiff's Complaint.

25.    To the extent Paragraph 25 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Defendants deny all remaining allegations in Paragraph 25 of Plaintiff's Complaint.

26.    To the extent Paragraph 26 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of

the Bodycam Videos. Defendants deny all remaining allegations in Paragraph 26 of Plaintiff's Complaint.

27. To the extent Paragraph 27 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Sgt. Gall is a Sergeant with the GHPD. Defendants deny all remaining allegations in Paragraph 27 of Plaintiff's Complaint.

28. To the extent Paragraph 28 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Sgt. Gall deployed his Taser in drive-stun mode because Plaintiff continued to actively resist officers, was grabbing on to Ptl. Malak's gear and uniform, and refused to place his hands behind his back as ordered. In deploying his Taser in drive-stun mode, Sgt. Gall acted reasonably in light of the circumstances and the facts known to Sgt. Gall at that time. Defendants deny all remaining allegations in Paragraph 28 of Plaintiff's Complaint.

29. To the extent Paragraph 29 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that officers cuffed Plaintiff's hands behind his back following an intense struggle that required five officers to use reasonable force to obtain control and compliance with their legitimate commands. At all times, the officers involved acted reasonably in light of the circumstances and facts known to them at the time. Defendants deny all remaining allegations in Paragraph 29 of Plaintiff's Complaint.

30.     To the extent Paragraph 30 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Ptl. Pitts, Lt. Vargo, and Ptl. Regovich secured Plaintiff's person for a reasonable period of time to maintain Plaintiff's compliance immediately following a violent struggle in which Plaintiff had assaulted and battered multiple officers. In doing so, Ptl. Pitts, Lt. Vargo, and Ptl. Regovich acted reasonably in light of the circumstances and the facts known to them at the time. Defendants deny all remaining allegations in Paragraph 30 of Plaintiff's Complaint.

31.     To the extent Paragraph 31 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Defendants deny all remaining allegations in Paragraph 31 of Plaintiff's Complaint.

32.     To the extent Paragraph 32 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Defendants deny all remaining allegations in Paragraph 32 of Plaintiff's Complaint.

33.     To the extent Paragraph 33 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Ptl. Malak used the term

"baby" when addressing Plaintiff after Plaintiff fractured Ptl. Malak's nose and jawbone. Defendants deny all remaining allegations in Paragraph 33 of Plaintiff's Complaint.

34.    To the extent Paragraph 34 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Ptl. Pitts read Plaintiff his rights in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendants deny all remaining allegations in Paragraph 34 of Plaintiff's Complaint.

35.    To the extent Paragraph 35 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Plaintiff was stood up after being handcuffed and having his rights read to him. Defendants deny all remaining allegations in Paragraph 35 of Plaintiff's Complaint.

36.    To the extent Paragraph 36 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of the Bodycam Videos. Further answering, Defendants admit only that Plaintiff asked, "was that fair?" after being stood up, and bragged shortly thereafter "I had fun with it … I was trying to teach you all a lesson, but I had fun with it." Defendants deny all remaining allegations in Paragraph 36 of Plaintiff's Complaint.

37.    To the extent Paragraph 37 of Plaintiff's Complaint attempts to summarize, interpret, or re-state the contents of the Bodycam Videos, Defendants state that the Bodycam Videos speak for themselves. Defendants deny Plaintiff's characterization and interpretation of

the Bodycam Videos. Further answering, Defendants admit only that the officers on-scene had reason to suspect that Plaintiff may have been in possession of a weapon at the time they encountered him walking on Turney Road, insofar as an eyewitness had identified Plaintiff as the perpetrator of an attempted carjacking at a local CVS, and that same store had been robbed that same evening. Moreover, Plaintiff began to struggle and resist when Ptl. Malak and Ptl. Pitts attempted to conduct a pat-down search, reinforcing officers' suspicion that he may have been armed. After resisting officers' attempts to conduct a pat-down, Plaintiff physically threatened and assaulted officers and actively resisted their legitimate commands to stop resisting and to place his hands behind his back. In light of these circumstances, the officers' use of force was reasonable and justified. Defendants deny all remaining allegations in Paragraph 37 of Plaintiff's Complaint.

38.    Paragraph 38 of Plaintiff's Complaint states a legal conclusion to which no admission or denial is required. To the extent a response is required, Defendants deny the allegations in Paragraph 38 of Plaintiff's Complaint.

39.    Paragraph 39 of Plaintiff's Complaint states a legal conclusion to which no admission or denial is required. To the extent a response is required, Defendants deny the allegations in Paragraph 39 of Plaintiff's Complaint.

40.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40 of Plaintiff's Complaint, and therefore deny the same.

41.    Defendants deny the allegations in Paragraph 41 of Plaintiff's Complaint.

42.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42 of Plaintiff's Complaint, and therefore deny the same.

43.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43 of Plaintiff's Complaint, and therefore deny the same.

44. Paragraph 44 of Plaintiff's Complaint does not contain any allegation of fact to which an admission or denial is required. To the extent a response is required, Defendants deny the allegations in Paragraph 44 of Plaintiff's Complaint.

45. Paragraph 45 of Plaintiff's Complaint does not contain any allegation of fact to which an admission or denial is required. To the extent a response is required, Defendants deny the allegations in Paragraph 45 of Plaintiff's Complaint.

46. Paragraph 46 of Plaintiff's Complaint does not contain any allegation of fact to which an admission or denial is required. To the extent a response is required, Defendants deny the allegations in Paragraph 46 of Plaintiff's Complaint.

### Jurisdiction and Venue

47. Defendants admit to the jurisdiction of this Court.

48. Defendants admit to this Court's supplemental jurisdiction over Plaintiff's state-law claims, insofar as Plaintiff's federal claims remain pending at this time. Defendants reserve the right to challenge this Court's continued jurisdiction over Plaintiff's state-law claims in the event Plaintiff's federal claims are no longer pending at any stage of this litigation.

49. Defendants admit that venue is proper in this judicial district.

### Parties

50. Defendants admit the allegations in Paragraph 50 of Plaintiff's Complaint.

51. Defendants admit the allegations in Paragraph 51 of Plaintiff's Complaint.

52. Defendants admit the allegations in Paragraph 52 of Plaintiff's Complaint.

53. Defendants admit the allegations in Paragraph 53 of Plaintiff's Complaint.

54. Defendants admit that the City of Garfield Heights is a political subdivision of the State of Ohio. Defendants deny all remaining allegations in Paragraph 54 of Plaintiff's Complaint.

55.    Defendants deny the allegations in Paragraph 55 of Plaintiff's Complaint.

56.    Defendants admit that the Garfield Heights Police Department is an agency of the City of Garfield Heights. Defendants deny all remaining allegations in Paragraph 56 of Plaintiff's Complaint.

**First Claim for Relief**
**(42 U.S.C. § 1983 Against Defendants Ptl. Malak, Ptl. Pitts, Lt. Vargo, Sgt. Gall, Ptl. Regovich, and Ptl. Jarzembak for Excessive Force and Failure to Intervene in Violation of the Fourth and Fourteenth Amendments)**

57.    Defendants incorporate their responses to the preceding paragraphs of Plaintiff's Complaint as if fully re-stated herein.

58-63.  Defendants deny the allegations in Paragraphs 58-63 of Plaintiff's Complaint and controvert the prayer for relief immediately following Paragraph 63 of Plaintiff's Complaint.

**Second Claim for Relief**
**(42 U.S.C. § 1983 Against Defendants Ptl. Malak, Ptl. Pitts, Lt. Vargo, Sgt. Gall, Ptl. Regovich, and Ptl. Jarzembak for False Arrest in Violation of the Fourth and Fourteenth Amendments)**

64.    Defendants incorporate their responses to the preceding paragraphs of Plaintiff's Complaint as if fully re-stated herein.

65-68.  Defendants deny the allegations in Paragraphs 65-68 of Plaintiff's Complaint and controvert the prayer for relief immediately following Paragraph 68 of Plaintiff's Complaint.

**Third Claim for Relief**
**(42 U.S.C. § 1983 Against Defendants Ptl. Malak and Ptl. Pitts for Unlawful/Unreasonable Search and Seizure in Violation of the Fourth and Fourteenth Amendments)**

69.    Defendants incorporate their responses to the preceding paragraphs of Plaintiff's Complaint as if fully re-stated herein.

70-73.  Defendants deny the allegations in Paragraphs 70-73 of Plaintiff's Complaint and controvert the prayer for relief immediately following Paragraph 73 of Plaintiff's Complaint.

**Fourth Claim for Relief**
**42 U.S.C. § 1983 Against Defendant City of Garfield Heights for Failure to Train and Supervise and for Unconstitutional Customs, Policies, and Practices Causing Constitutional Violations)**

74.     Defendants incorporate their responses to the preceding paragraphs of Plaintiff's Complaint as if fully re-stated herein.

75-79. Defendants deny the allegations in Paragraphs 75-79 of Plaintiff's Complaint and controvert the prayer for relief immediately following Paragraph 79 of Plaintiff's Complaint.

**Fifth Claim for Relief**
**(Assault and Battery Against Defendants Ptl. Malak, Ptl. Pitts, Lt. Vargo, Sgt. Gall, and Ptl. Regovich)**

80.     Defendants incorporate their responses to the preceding paragraphs of Plaintiff's Complaint as if fully re-stated herein.

81-85. Defendants deny the allegations in Paragraphs 81-85 of Plaintiff's Complaint and controvert the prayer for relief immediately following Paragraph 85 of Plaintiff's Complaint.

**Sixth Claim for Relief**
**(Intentional Infliction of Emotional Distress Against Defendants Ptl. Malak, Ptl. Pitts, Lt. Vargo, Sgt. Gall, and Ptl. Regovich)**

86.     Defendants incorporate their responses to the preceding paragraphs of Plaintiff's Complaint as if fully re-stated herein.

87-90. Defendants deny the allegations in Paragraphs 87-90 of Plaintiff's Complaint and controvert the prayer for relief immediately following Paragraph 90 of Plaintiff's Complaint.

**Seventh Claim for Relief**
**(False Arrest Against Defendants Ptl. Malak, Ptl. Pitts, Lt. Vargo, Sgt. Gall, Ptl. Regovich, and Ptl. Jarzembak in Violation of Ohio law)**

91.     Defendants incorporate their responses to the preceding paragraphs of Plaintiff's Complaint as if fully re-stated herein.

92-95.  Defendants deny the allegations in Paragraphs 92-95 of Plaintiff's Complaint and controvert the prayer for relief immediately following Paragraph 95 of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

For their affirmative defenses to the allegations in Plaintiff's Complaint, Defendants state as follows:

1.  Plaintiff's claims are barred by Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

2.  Some or all of Plaintiff's claims are barred for failure to mitigate damages, if any.

3.  Some or all of Plaintiff's claims are barred by unclean hands.

4.  Some or all of Plaintiff's claims are barred by consent.

5.  Some or all of Plaintiff's claims are barred by self-defense.

6.  Some or all of Plaintiff's claims are barred by defense of others.

7.  Some or all of Plainitff's claims are barred by setoff.

8.  Some or all of Plaintiff's claims are barred by the doctrine of qualified immunity.

9.  Some or all of Plaintiff's claims are barred by the immunity afforded to political subdivisions of the State of Ohio and their employees under R.C. Chapter 2744.

10.  The City of Garfield Heights is not a proper defendant to Plaintiff's claims under 42 U.S.C. § 1983, and Plaintiff has failed to plead the existence of any official municipal policy or custom that caused any alleged constitutional tort.

11.  At all times, Defendants' conduct was reasonable in light of the circumstances and the facts known to Defendants.

12.  Defendants reserve the right to raise additional affirmative defenses as the same may become known during the course of discovery of the within action.

**WHEREFORE**, having fully answered Plaintiff's Complaint, Defendants controvert Plaintiff's prayer for relief and respectfully request that this Honorable Court:

1.     Dismiss Plaintiff's Complaint with prejudice on all counts;

2.     Order an award of court costs, reasonable attorneys' fees, and other reasonable expenses incurred in connection with the defense of this action to Defendants; and

3.     Order any further relief that this Court deems just and proper.

## COUNTERCLAIM OF DEFENDANTS MICHAEL MALAK AND ROBERT PITTS

### Introduction

1.      On the night of January 23, 2020, Defendants and Counterclaim Plaintiffs Patrolman Michael Malak ("Ptl. Malak") and Patrolman Robert Pitts ("Ptl. Pitts") responded to a 911 call identifying Plaintiff and Counterclaim Defendant Kenta Settles ("Settles") as the suspect in an attempted carjacking at a CVS Pharmacy. After encountering Settles on Turnery Road in Garfield Heights, Ptl. Malak informed Settles that he was being detained and attempted to perform a pat-down inspection to ensure his and Ptl. Pitts' safety prior to investigating further. Before Ptl. Malak and Ptl. Pitts could complete the pat-down and investigate Settles' involvement in the reported criminal activity that had triggered their stop, Settles began to actively resist officers' commands and engaged them in a violent struggle that left Ptl. Malak with a fractured nose and maxilla and Ptl. Pitts with multiple contusions and abrasions.

2.      Apart from being covered in Ptl. Malak's blood, Settles emerged from the encounter relatively unscathed. As Settles later bragged to GHPD Lt. Todd Vargo, "***I had fun with it … I was trying to teach you all a lesson, but I had fun with it***."

3.      As officers explained to Settles at the time – and as Ptl. Malak and Ptl. Pitts now hope to communicate through this Counterclaim – there was nothing "fun" about their encounter with Settles on the night of January 23, 2020. Had Settles simply complied with officers' legitimate requests and cooperated in their attempt to conduct a pat-down, the events giving rise to Settles' lawsuit – and to this Counterclaim – could have been entirely avoided.

4.      Instead, Settles chose to actively resist officers even though they had probable cause to effect an arrest (or, at very least, reasonable suspicion to conduct an investigatory stop) based on an eyewitness report of criminal activity.

17

5.      In response to Settles' resistance – which included punching Ptl. Malak in the face and fracturing his nasal bone and maxilla upon impact – Ptl. Malak, Ptl. Pitts, and the other officers who subsequently arrived on-scene used reasonable force to detain Settles and to enforce compliance with their directives. At all times that officers used force against Settles, it was a reasonable and proportionate response to Settles' own active resistance and aggression.

6.      Unfortunately, and for motives that are beyond Ptl. Malak's and Ptl. Pitts' comprehension, Settles has thus far succeeded in propagating a misguided, incomplete, and one-sided narrative that has falsely portrayed Settles as the victim of unprovoked police brutality. In reality, and as developed herein, Settles is a repeat criminal offender whose violent resistance during a lawful investigation of reported criminal activity resulted in two officers sustaining significant injuries and being unjustifiably vilified in court filings and the media. That irresponsible and inflammatory narrative ends today.

## Parties

7.      Ptl. Malak is a natural person and officer of the Garfield Heights Police Department who resides within the territorial jurisdiction of this Court.

8.      Ptl. Pitts is a natural person and officer of the Garfield Heights Police Department who resides within the territorial jurisdiction of this Court.

9.      Settles is a natural person who, upon information and belief, resides within the territorial jurisdiction of this Court.

## Jurisdiction and Venue

10.      This Court has subject matter jurisdiction over Malak's and Pitts' state-law counterclaims pursuant to 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over Settles because Settles resides in this judicial district.

18

12.     Venue is proper in this judicial district because the acts giving rise to this Counterclaim occurred within the City of Garfield Heights in the Northern District of Ohio.

**Background Facts**

13.     At approximately 11:35 p.m. on the night of January 23, 2020, Cleveland resident Jeff Trimble ("Trimble") sat in the drive-through lane of the CVS Pharmacy on Turney Road in Garfield Heights, Ohio.

14.     While waiting for his medication in the drive-through lane, Trimble saw a man standing behind his vehicle observing him through the rear-view mirror.

15.     Unbeknownst to Trimble, that man was Kenta Settles.

16.     As Trimble would later describe to Patrolman Rob Jarzembak ("Ptl. Jarzembak") of the Garfield Heights Police Department ("GHPD"), "I think he was looking to see what I looked like through my mirror, like to see … if he could handle me." Trimble's suspicion that Settles was planning on attacking him was confirmed when Settles suddenly rushed the passenger side of Trimble's car, grabbed the door handle, and tried to rip it open without any warning or explanation.

17.     At no time before he tried to rip open the door of Trimble's car did Settles speak to Trimble.

18.     At no time before he tried to rip open the door of Trimble's car did Settles attempt to explain to Trimble why he was standing behind Trimble's car and observing him.

19.     In response to Settles' attempt to rip open his passenger side door, Trimble laid down on his car horn.

20.     Settles responded by leaving the CVS drive-through and began to head down Turney Road in Garfield Heights.

21.     While Settles was getting away from the CVS – and fearing that Settles might try to, as Trimble later explained to police, "carjack somebody else," – Trimble called Garfield Heights 911. Upon reaching an operator, Trimble reported the following:

> Trimble:     Yes, I'm calling I was um sitting at CVS in the drive-through lane of uh the pharmacy and some guy came up behind my vehicle, stood there for a minute, and then just rushed around and tried to rip open my passenger door, I had it locked.
>
> Operator:    When did this happen?
>
> Trimble:     Uh, just about three or four minutes ago.
>
> Operator:    Okay, what did he look like?
>
> Trimble:     He's black male, kind of like medium build. He's … I just went down Turney, he's almost at Dunkin Donuts now. [remainder unintelligible].
>
> Operator:    Do you know what he was wearing?
>
> Trimble:     Like a green hoodie, it looks like a green hoodie but it was darker so I couldn't really tell, but he's walking on the side of the street.

22.     The 911 operator who took Trimble's call alerted Ptl. Malak and Ptl. Pitts to Trimble's complaint and described Settles' whereabouts, clothing, and appearance (based on Trimble's eyewitness description) to the officers.

23.     As he drove his police cruiser along Turney Road, Ptl. Malak saw a man wearing a green hoodie matching Settles' description. In response, Ptl. Malak turned on his overhead lights and pulled up behind Settles.

24.     At approximately 11:40 p.m., Ptl. Malak got out of his cruiser and attempted to get Settles' attention. Despite Ptl. Malak's repeated commands to "stop," Settles continued to walk away from the officers.

25.     Ptl. Malak followed Settles and ordered him to stop until Settles turned around and acknowledged Ptl. Malak's commands. Upon reaching Settles, Ptl. Malak informed Settles

that he was "being detained" and escorted him to the hood of his police cruiser for a pat-down inspection.

26.     At the time Ptl. Malak encountered Settles – and based upon the information available at that time – Ptl. Malak had probable cause to arrest (or, at very least, reasonable suspicion to investigate) Settles for multiple offenses, including but not limited to:

      a.     Attempted theft in violation of R.C. 2923.02 and R.C. 2913.02.

      b.     Assault (or, at very least, attempted assault) in violation of R.C. 2903.13.

      c.     Criminal trespass (or, at very least, attempted criminal trespass) in violation of R.C. 2911.21.

      d.     Menacing in violation of R.C. 2903.22.

27.     Specifically, Settles attempted to enter Trimble's vehicle without privilege or consent and caused Trimble to believe that Settles would cause physical harm to Trimble's person or property and/or attempt to steal Trimble's vehicle when Settles rushed Trimble's car and attempted to rip open the passenger side door without any warning. Trimble alerted the GHPD to this criminal act and offered a detailed eyewitness description of Settles as the alleged perpetrator. At the time he detained Settles, Ptl. Malak had no reason to believe that Trimble's complaint and eyewitness description of Settles as the perpetrator of an alleged criminal offense was anything but credible.

28.     Ptl. Pitts arrived on-scene shortly after Ptl. Malak detained Settles.

29.     In preparation for a pat-down, Ptl. Malak directed Settles to place his hands on the hood of a police cruiser and to spread his legs.

30.     Settles initially resisted spreading his legs, which prompted Ptl. Malak to repeat his command to "spread your legs" and to use his own feet to move Settles' legs apart.

21



**Figure 1: Ptl. Malak attempts to spread Settles' legs for a pat-down inspection.**

31.     As Ptl. Malak attempted to spread Settles' legs for a pat down inspection, Ptl.

Pitts held Settles' right hand and wrist down on the hood of the police cruiser. Ptl. Pitts did so in

an attempt to secure Settles and to prevent him from reaching for any concealed weapons while

Ptl. Malak conducted the pat-down.



**Figure 2: Ptl. Pitts (right) holds Settles' right hand and wrist on the hood of the police cruiser in preparation for a pat-down inspection.**

22

32.    Ptl. Pitts observed that Settles had a small pocket in front of his hoodie that was sagging as though it contained an object of some weight. Combined with Trimble's eyewitness report identifying Settles as the perpetrator of an attempted carjacking and the fact that an armed robbery had already taken place at the same CVS that evening, Ptl. Pitts and Ptl. Malak were reasonably concerned that Settles could be armed.

33.    As Ptl. Malak attempted to spread Settles' legs and Ptl. Pitts held Settles' right hand down on the police cruiser hood, Settles began to tense up, wriggle his wrist, and pull away from the officers.

34.    Settles then tried to raise his right hand, prompting Ptl. Pitts to order Settles to put his hands behind his back. In an attempt to obtain compliance with this lawful command, Ptl. Pitts grabbed the back of Settles' arm and tried to maneuver it behind Settles' back for handcuffing.



**Figure 3: Ptl. Pitts attempts to maneuver Settles' right hand behind Settles' back.**

23

35.     Ignoring Ptl. Pitts' command to place his hands behind his back, Settles dislodged his right arm from Ptl. Pitts' grasp. In response, Ptl. Malak immediately called for back-up.

36.     After losing control of Settles' right arm, Ptl. Pitts immediately grabbed the sleeve of Settles' hoodie and pulled Settles to the right and down to the ground while attempting to conduct a leg sweep. Ptl. Pitts executed this take down so that he and Ptl. Malak could gain control of the quickly escalating situation and place Settles in handcuffs.

37.     Once he hit the ground with Settles, Ptl. Pitts observed Settles' right hand near Settles' waistline and hoodie pouch. At the time, it reasonably appeared to Ptl. Pitts that Settles might be reaching for a concealed weapon.

38.     In an attempt to distract and stun Settles (and prevent him from accessing any concealed weapons), Ptl. Pitts delivered a series of strikes to Settles' upper left shoulder, back, and head area, which were the only parts of Settles' body exposed to Ptl. Pitts. Ptl. Pitts's use of force was reasonable under the circumstances to obtain compliance with the officers' lawful commands and prevent Settles from potentially accessing a concealed weapon.

39.     Ptl. Pitts and Ptl. Malak repeated their commands for Settles to place his hands behind his back and stop resisting. Settles did not comply and continued to actively resist the officers.

40.     After Ptl. Pitts and Ptl. Malak alternatively commanded, "hands behind your back!" at least four times, Ptl. Malak warned, "you're gonna get tased!"

41.     Settles continued to resist and failed to comply with the officers' repeated commands to place his hands behind his back.

42.     Having failed to obtain Settles' compliance with verbal commands and de minimis physical force, Ptl. Malak and Ptl. Pitts disengaged from Settles and deployed their Tasers in probe mode.

24

43.     Ptl. Malak's and Ptl. Pitts' decision to deploy their Tasers was reasonable and justified under the circumstances. At the time the Ptl. Malak and Ptl. Pitts deployed their Tasers, Settles was actively resisting arrest and refusing to comply with the officers' repeated verbal commands to place his hands behind his back.

44.     Ptl. Malak's and Ptl. Pitts' Taser deployments had little effect on Settles. After being tased, Settles rolled onto his back and reached for his waistband with his right hand.



**Figure 4: Settles reaches for his waistband after being tased.**

45.     Ptl. Malak and Ptl. Pitts responded by ordering Settles to get on his stomach.

46.     In response, Settles attempted to stand up and swung his fists at Ptl. Malak.

25



**Figure 5: Settles ignores officers' commands to get on his stomach, tries to stand up, and begins to swing his right arm at Ptl. Malak.**

47.     During the ensuing struggle, Settles' right fist struck Ptl. Malak.



**Figure 6: Settles' right fist (upper left corner) makes contact with Ptl. Malak. Ptl. Pitts attempts to stop Settles by deploying his Taser to Settles' right shoulder in drive-stun mode.**

26

48.     Ptl. Pitts responded to Settles' attack on Ptl. Malak by deploying his Taser to Settles' right shoulder in drive-stun mode. Ptl. Pitts' Taser deployment was reasonable under the circumstances in light of Settles' active (and now violent) resistance to officers' legitimate commands.

49.     After striking Ptl. Malak, Settles continued to resist by grabbing onto Ptl. Malak's uniform and gear. Ultimately, Settles was able to grab Ptl. Malak's Taser and wrestle it away from Ptl. Malak's right hand.

50.     In response to Ptl. Malak's prior call for back-up, GHPD Lt. Todd Vargo ("Lt. Vargo") arrived on-scene to assist Ptl. Malak and Ptl. Pitts. Because Settles continued to struggle with and resist Plt. Malak and Ptl. Pitts, Lt. Vargo applied his body weight to Settles' legs in an attempt to restrain Settles on his stomach so Ptl. Malak and Ptl. Pitts could secure Settles' hands behind his back. Lt. Vargo's application of his body weight to Settles' legs was reasonable under the circumstances and necessary to restrain Settles.



**Figure 7: Lt. Vargo applies his body weight to Settles' legs in an effort to restrain him. Note Settles' right arm grabbing Ptl. Malak's torso.**

27

51.     Lt. Vargo was followed on-scene by GHPD Sgt. William Gall ("Sgt. Gall").

52.     As Sgt. Gall arrived on-scene, Settles struck Ptl. Malak once again, this time punching him directly in the face and fracturing Ptl. Malak's nasal bone and maxilla.



Settles' fist (note the green sleeve) swings up to strike Ptl. Malak in the face

Settles continues to kick his feet while Lt. Vargo attempts to restrain him

**Figure 8: As Sgt. Gall arrives on scene, his body camera captures Settles' right fist swinging at Ptl. Malak's face.**

53.     Because Settles continued to violently resist and was still not complying with officers' commands to place his hands behind his back, Sgt. Gall deployed his Taser in drive-stun mode. Given Settles' continued, active resistance, Sgt. Gall's Taser deployment was reasonable under the circumstances.

54.      Sgt. Gall's Taser deployment had no noticeable effect on Settles, who continued to resist officers' attempts to place Settles' hands behind his back.

55.     At this point, GHPD Patrolman Brian Regovich ("Ptl. Regovich") arrived on-scene to assist Ptl. Malak, Ptl. Pitts, Sgt. Gall, and Lt. Vargo.

56.     Only after Lt. Vargo's hold on Settles' legs prevented Settles from moving any further were Ptl. Malak, Ptl. Pitts, Ptl. Regovich, Sgt. Gall, and Lt. Vargo able to finally place Settles' hands behind his back and cuff them in place.

28

57.     Ultimately, five officers were needed to restrain Settles and to place his hands behind his back.

58.     Two of those officers – Ptl. Malak and Ptl. Pitts – sustained significant injuries as a result of Settles' assault, battery, obstruction of official business, and resting arrest.

59.     As a direct and proximate result of Settles' assault, battery, obstruction of official business, and resisting arrest, Plt. Malak sustained a nasal bone fracture, right hand strain, and maxilla (i.e., jawbone) fracture.

60.     To recover from these injuries, Ptl. Malak was required to remain off-work by his physician for six weeks after Settles' arrest.

61.     As a direct and proximate result of Settles' assault, battery, obstruction of official business, and resisting arrest, Ptl. Pitts sustained a right-hand contusion, right wrist strain, abrasion of his right index finger, and right knee contusion.



**Figure 9: Ptl. Malak's bloody and fractured nose immediately following Settles' arrest.**



**Figure 10: Settles' hoodie stained with Ptl. Malak's blood.**

62.     For his part, Settles emerged from the encounter covered in Ptl. Malak's blood but comparatively unscathed. After Lt. Vargo asked Settles if he was hurt, Settles replied, "I'm doing just fine." Settles continued, "***I had fun with it … I was trying to teach you all a lesson, but I had fun with it***."[1]

63.     On or about January 30, 2020, the jurors of the Grand Jury of Cuyahoga County, Ohio, indicted Settles for assault against Ptl. Malak and Ptl. Pitts and obstruction of official business in Cuyahoga County case no. CR-20-648102.

64.     Additionally, the Grand Jury found and specified that Settles "is a repeat violent offender," insofar as Settles was previously convicted of the crime of aggravated robbery with a one-year firearm specification in violation of R.C. 2911.01/2941.141 in Cuyahoga County Court of Common Pleas case no. CR-09-526327.

65.     After serving five years in prison for aggravated robbery in CR-09-526327, Settles pleaded guilty to and was convicted of assault on a peace officer with a motor vehicle in

---

[1] Vargo Bodycam Video (Doc #: 3) at 7:25-8:00.

Cuyahoga County case no. CR-14-590964. Settles was then sentenced to twelve months' imprisonment and three years' post release control.

66.     Settles subsequently violated his post release control in CR-14-590964 and was charged with escape in violation of R.C. 2921.34(A)(3) in Cuyahoga County Case No. CR- 18-631580. Settles pleaded guilty to escape in CR- 18-631580 on or about October 3, 2018.

67.     On June 12, 2020 the Cuyahoga County Prosecutor dismissed all pending charges against Settles in CR-20-648102 without prejudice. Accordingly, the criminal charges against Settles relating to his encounter with Ptl. Malak and Ptl. Pitts have not been resolved in Settles' favor.

### Count I
### Civil Assault
### Ohio Common Law

68.     Ptl. Malak and Ptl. Pitts incorporate all preceding allegations as if fully set forth herein.

69.     On the night of January 23, 2020, Settles attempted to harm or touch Ptl. Malak and Ptl. Pitts in an offensive manner.

70.     Settles knew with substantial certainty that his act would bring about harmful or offensive contact with Ptl. Malak and Ptl. Pitts.

71.     Settles' attempt reasonably placed Ptl. Malak and Ptl. Pitts in fear of an unwanted, offensive contact, insofar as it was coupled with the definitive act of Settles swinging his fists at Ptl. Pitts and Ptl. Malak.

72.     Settles had the apparent ability to do the harm threated by his definitive act of aggression.

73.     As a direct and proximate result of Settles' assault, Ptl. Malak and Ptl. Pitts have sustained actual damages in an amount to be determined at trial on the merits.

**Count II**
**Civil Battery**
**Ohio Common Law**

74.     Ptl. Malak and Ptl. Pitts incorporates all preceding allegations as if fully set forth herein.

75.     On the night of January 23, 2020, Settles made physical contact with and touched Ptl. Malak and Ptl. Pitts in a harmful and offensive manner.

76.     Settles battered Ptl. Malak by, among other things, punching Ptl. Malak in the face and fracturing his nasal bone and maxilla, grabbing onto and pulling Ptl. Malak's uniform and gear, and ripping Ptl. Malak's Taser out of his hands.

77.     Settles battered Ptl. Pitts by, among other things, striking Ptl. Pitts in the leg.

78.     As a direct and proximate result of Settles' battery, Ptl. Malak and Ptl. Pitts have sustained actual damages in an amount to be determined at trial on the merits.

**Count III**
**Civil Liability for Criminal Acts – Assault**
**R.C. 2307.60 & R.C. 2903.13**

79.     Ptl. Malk and Ptl. Pitts incorporate all preceding allegations as if fully set forth herein.

80.     On the night of January 23, 2020, Settles knowingly caused or attempted to cause physical harm to Ptl. Malak and Ptl. Pitts.

81.     At all relevant times, Ptl. Malak and Ptl. Pitts were peace officers engaged in the performance of their official duties.

82.     As a direct and proximate result of Settles' criminal assault, Ptl. Malak and Ptl. Pitts have sustained actual damages in an amount to be determined at trial on the merits.

**Count IV**
**Civil Liability for Criminal Acts – Obstructing Official Business**
**R.C. 2307.60 & R.C. 2921.31**

83.     Ptl. Malak and Ptl. Pitts incorporate by reference all preceding allegations as if fully set forth herein.

84.     On the night of January 23, 2020, Settles, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by Ptl. Malak and Ptl. Pitts of authorized acts within the Ptl. Malak's and Ptl. Pitts' official capacity as police officers of the City of Garfield Heights, hampered and impeded Ptl. Malak and Ptl. Pitts in the performance of their lawful duties.

85.     Specifically, Ptl. Malak and Ptl. Pitts were engaged in the performance of acts within their official capacity as peace officers when they detained Settles following an eyewitness report that Settles had engaged in suspected criminal activity.

86.     Settles prevented, obstructed, and/or delayed the performance of these official acts when he actively resisted Ptl. Malak's and Ptl. Pitts' attempt to conduct a pat-down inspection and their subsequent attempts to handcuff Settles as part of their lawful and appropriate response to Trimble's 911 call.

87.     As a direct and proximate result of Settles' obstruction of official business, Ptl. Malak and Ptl. Pitts have sustained actual damages in an amount to be determined at trial on the merits.

**Count V**
**Civil Liability for Criminal Acts – Resisting Arrest**
**R.C. 2307.60 & R.C. 2921.33**

88.     Ptl. Malak and Ptl. Pitts incorporate by reference all preceding allegations as if fully set forth herein.

33

89.     On the night of January 23, 2020, Settles, recklessly or by force, resisted or interfered with his lawful arrest.

90.     On the night of January 23, 2020, Settles, recklessly or by force, resisted or interfered with his lawful arrest and, during the course of or as a result of his resistance or interference, caused physical harm to Ptl. Malak and Ptl. Pitts.

91.     As a direct and proximate result of his resistance or interference with his lawful arrest, Settles caused actual damages to Ptl. Malak and Ptl. Pitts, in an amount to be determined at trial on the merits.

**WHEREFORE**, Defendants and Counterclaim Plaintiffs Michael Malak and Robert Pitts respectfully demand:

1.     Entry of judgment on Defendants' Counterclaim against Settles;

2.     An award of compensatory damages in excess of $25,000.00, the precise amount to be proven at trial on the merits;

3.     An award of punitive damages as allowed by law;

4.     An award of reasonable attorneys' fees and costs as allowed by law;

5.     Pre- and post-judgment interest; and

6.     Any further relief that this Court deems just and proper.


Dated: July 14, 2020                                    Respectfully submitted,


                                    /s/ *Daniel J. Rudary*
                                    Daniel J. Rudary (0090482)
                                    Justin M. Lovdahl (0096958)
                                    **BRENNAN, MANNA & DIAMOND, LLC**
                                    75 E. Market Street
                                    Akron, OH  44308
                                    Phone:       (330) 253-5060
                                    Fax:          (330) 253-1977
                                    E-mail:      djrudary@bmdllc.com
                                                    jmlovdahl@bmdllc.com

34

Robert A. Hager (0040196)
**BRENNAN, MANNA & DIAMOND, LLC**
200 Public Square, Ste. 3270
Cleveland, OH 44114
Telephone:      (216) 658-2155
Facsimile:      (216) 658-2156
Email:          rahager@bmdllc.com

Timothy J. Riley (0042007)
Office of the Law Director
City of Garfield Heights
5407 Turney Road
Garfield Heights, OH 44125
Telephone:      (216) 475-0824
Facsimile:      (216) 475-1124
Email:          triley@garfieldhts.org

*Counsel for Defendants Michael Malak, Robert Pitts, Brian Regovich, Rob Jarzembak, William Gall, Todd Vargo, and the City of Garfield Heights*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of July, 2020 a copy of the foregoing was filed electronically.   Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

/s/ *Daniel J. Rudary*
*Counsel for Defendants Michael Malak, Robert Pitts, Brian Regovich, Rob Jarzembak, William Gall, Todd Vargo, and the City of Garfield Heights*

4849-9002-2811, v. 1