# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

KENTA SETTLES,          )
          )
      Plaintiff,     )    CASE NO. 1:20-cv-01631
          )
v.          )
          )    JUDGE SOLOMON OLIVER, JR.
THE CITY OF GARFIELD HEIGHTS, )
*et al.*,         )
          )
      Defendants.   )

## MOTION OF DEFENDANTS THE CITY OF GARFIELD HEIGHTS, PATROLMAN MICHAEL MALAK, AND PATROLMAN ROBERT PITTS TO DISMISS THE COMPLAINT OF PLAINTIFF KENTA SETTLES

Defendants, the City of Garfield Heights, Patrolman Michael Malak, and Patrolman Robert Pitts respectfully move this Honorable Court for an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing the Complaint of Plaintiff Kenta Settles with prejudice. Alternatively, and if not dismissed outright, this matter should be consolidated with case no. 1:20-cv-01288-DCN for further proceedings.[1]

A Memorandum in Support of this Motion is attached hereto and incorporated by reference herein. In further support of this Motion, Defendants respectfully direct the Court's attention to the following documents that were incorporated in Plaintiff's Complaint in the above-captioned matter by reference, but not filed as attachments or exhibits thereto. For the convenience of the Court, these documents have been filed as exhibits to this Motion:

- The Complaint of Plaintiff Kenta Settles in *Settles v. Malak, et al.*, N.D. Ohio No. 1:20-cv-01288-DCN;

---

[1] Defendants have contemporaneously filed a Motion to Consolidate the above-captioned matter with 1:20-cv-01288-DCN in the event this Court deems it appropriate to order consolidation in lieu of ruling on the instant Motion to Dismiss.

**EXHIBIT C**

- The body camera footage attached to the aforementioned Complaint as Exhibit 1 (manually filed with the Clerk contemporaneously with this Motion);

- The Counterclaim of Defendants Michael Malak and Robert Pitts in *Settles v. Malak, et al.*, N.D. Ohio No. 1:20-cv-01288-DCN.

Dated: July 29, 2020

Respectfully submitted,

/s/ *Daniel J. Rudary*

Daniel J. Rudary (0090482)
Justin M. Lovdhal (0096958)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH  44308
Phone:         (330) 253-5060
Fax:             (330) 253-1977
E-mail:        djrudary@bmdllc.com
                    jmlovdahl@bmdllc.com

Robert A. Hager (0040196)
**BRENNAN, MANNA & DIAMOND, LLC**
200 Public Square, Ste. 3270
Cleveland, OH 44114
Telephone:    (216) 658-2155
Facsimile:    (216) 658-2156
Email:          rahager@bmdllc.com

Timothy J. Riley (0042007)
Office of the Law Director
City of Garfield Heights
5407 Turney Road
Garfield Heights, OH 44125
Telephone:    (216) 475-0824
Facsimile:    (216) 475-1124
Email:          triley@garfieldhts.org

*Counsel for Defendants the City of Garfield Heights, Michael Malak, and Robert Pitts*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Daniel J. Rudary*
*Counsel for Defendants the City of Garfield Heights, Michael Malak, and Robert Pitts*

4812-1572-8837, v. 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KENTA SETTLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:20-cv-01631 |
| v. | ) | |
| | ) | |
| THE CITY OF GARFIELD HEIGHTS, | ) | JUDGE SOLOMON OLIVER, JR. |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF DEFENDANTS THE CITY OF GARFIELD HEIGHTS, MICHAEL MALAK, AND <u>ROBERT PITTS TO DISMISS THE COMPLAINT OF PLAINTIFF KENTA SETTLES</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

STATEMENT OF FACTS ............................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................. 6

SUMMARY OF THE ARGUMENT ........................................................................... 7

ARGUMENT ................................................................................................................ 8

I.  In Ruling on Defendants' Motion to Dismiss, this Court Considers Plaintiff's
Well-Pleaded Factual Allegations and Any Documents Incorporated by
Reference in Plaintiff's Complaint .............................................................. 8

II.  Ptl. Malak's and Ptl. Pitts' Counterclaim in *Settles* I is Amply Supported by
Probable Cause. As Such, Filing the Counterclaim Did Not Constitute
Actionable First Amendment Retaliation in Violation of 42 U.S.C. § 1983 ........... 9

A.  Civil Proceedings Initiated by Government Officials Do Not Give Rise to
Actionable First Amendment Retaliation if Supported by Probable
Cause ...................................................................................... 9

B.  Based on the Bodycam Videos Incorporated in Plaintiff's Complaint, it is
"Reasonable" to Believe There is a "Chance" Ptl. Malak's and Ptl. Pitts'
Counterclaims "May Be Held Valid" Upon Adjudication ........................ 12

III.  There is No Clearly Established Right to Be Free From a Viable Counterclaim
Filed by Government Officials in a Civil Rights Action. Accordingly, Ptl. Malak
and Ptl. Pitts Are Entitled to Qualified Immunity ................................... 16

CONCLUSION ........................................................................................................... 20

## TABLE OF AUTHORITIES

**STATUTES**

42 U.S.C. § 1983 ................................................................................6, 10

R.C. 2307.60 ...............................................................................1, 14, 15

R.C. 2903.13 .........................................................................................14

R.C. 2921.31 .........................................................................................15

R.C. 2921.33 .........................................................................................15

**COURT RULES**

Fed. R. Civ. P. 13(a)(1) ........................................................................12

**JUDICIAL OPINIONS**

*Anton v. Lehpamer,*
    534 F.Supp. 239 (N.D.Ill.1982) ......................................................18

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ........................................................................16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..........................................................................8

*Bates v. McKeon,*
    650 F.Supp. 476 (D.Conn.1986) .................................................18, 19

*Bell v. Sch. Bd. of Norfolk,*
    734 F.2d 155 (4th Cir. 1984) ...........................................................19

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.,*
    461 U.S. 731 (1983) ........................................................................10

*City & Cty. of San Francisco, Calif. v. Sheehan,*
    575 U.S. 600 (2015) ........................................................................17

*Davis v. White,*
    794 F.3d 1008 (8th Cir.2015) ..........................................................18

*DeMartini v. Town of Gulf Stream,*
    942 F.3d 1277 (11th Cir.2019) ....................................................................... *passim*

*Driscoll v. Schmitt,*
    649 F.2d 631 (8th Cir.1981) ................................................................................18

*Gonzalez v. Spofford,*
    8th Dist. Cuyahoga No. 85231, 2005-Ohio-3415 ..............................................14

*Graham v. Davis,*
    880 F.2d 1414 (D.C.Cir.1989) ...........................................................................18

*Greenwich Citizens Comm., Inc. v. Ctys. of Warren & Wash. Indus. Dev. Agency,*
    77 F.3d 26 (2d Cir. 1996)....................................................................................19

*Hagans v. Franklin Cty. Sheriff's Office,*
    695 F.3d 505 (6th Cir.2012) ...............................................................................17

*Harrison v. Springdale Water & Sewer Comm'n,*
    780 F.2d 1422 (8th Cir. 1986) ............................................................................19

*Hartman v. Moore,*
    547 U.S. 250 (2006)................................................................................9, 10, 19

*Hunt v. City of Toledo Law Dept.,*
    881 F.Supp.2d 854 (N.D.Ohio 2012)..................................................................14

*In re Travel Agent Com'n Antitrust Litigation,*
    583 F.3d 896 (6th Cir.2009) .................................................................................9

*League of United Latin Am. Citizens v. Bredesen,*
    500 F.3d 523 (6th Cir.2007) .................................................................................8

*Lyons v. City of Xenia,*
    417 F.3d 565 (6th Cir. 2005) ..............................................................................15

*Nieves v. Bartlett,*
    139 S.Ct. 1715 (2019)............................................................................9, 10, 19

*Painter v. Harvey,*
    673 F.Supp. 777 (W.D.Va.1987) ........................................................................12

*Phillips v. Blair*,
    786 Fed.Appx. 519 (6th Cir.2019) ..............................................................................15

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ..................................................................................................11

*Rosania v. Taco Bell of America, Inc.*,
    303 F.Supp.2d 878 (N.D.Ohio 2004) ........................................................................10

*Rudlaff v. Gillispie*,
    791 F.3d 638 (6th Cir.2015) ....................................................................................15

*Smith v. City of New York*,
    611 F.Supp. 1080 (S.D.N.Y.1985) ............................................................................18

*Venable v. Keever*,
    263 F.3d 162, 2001 WL 803565 (5th Cir.2001) (table) ..............................................18

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
    987 F.2d 429 (7th Cir.1993) ......................................................................................9

*Wegener v. City of Covington*,
    933 F.2d 390 (6th Cir.1991) ....................................................................................16

*Weiner v. Klais & Co.*,
    108 F.3d 86 (6th Cir.1997) ........................................................................................9

*Wright v. City of Euclid, Ohio*,
    962 F.3d 852 (6th Cir.2020) ....................................................................................17

<u>**STATEMENT OF FACTS**</u>

This is a case about (another pending) case. On June 11, 2020, Plaintiff Kenta Settles ("Settles") filed an action in this Court captioned *Settles v. Malak, et al.*, N.D. Ohio No. 1:20-cv-01288-DCN (hereinafter, "*Settles* I"). *Settles* I was assigned to Judge Donald Nugent and remains pending before Judge Nugent as of this filing. In brief, *Settles* I alleges that several police officers employed by the City of Garfield Heights – including Patrolman Michael Malak ("Ptl. Malak") and Patrolman Robert Pitts ("Ptl. Pitts") – used excessive force in violation of the Fourth Amendment to the United States Constitution when they arrested Settles on the night of January 23, 2020. *See Settles* I Complaint (attached hereto as **Exhibit A**).

In response to the Complaint in *Settles* I, Ptl. Malk and Ptl. Pitts filed an Answer and Counterclaim on July 14, 2020. *See Settles* I Answer and Counterclaim (attached hereto as **Exhibit C**). The Officers' Counterclaim alleges that Settles assaulted and battered Ptl. Malak and Ptl. Pitts, and further injured them by engaging in the criminal acts of assault, obstruction of official business, and resisting arrest.[1]

The January 23, 2020 encounter between Settles, Ptl. Malak, Ptl. Pitts, and other officers of the Garfield Heights Police Department was captured on the body worn cameras of Plt. Malak, Ptl. Pitts, Lieutenant Todd Vargo ("Lt. Vargo"), Sergeant William Gall ("Sgt. Gall"), Patrolman Brian Regovich ("Ptl. Regovich"), and Patrolman Rob Jarzembak ("Ptl. Jarzembak"). This footage was filed as Exhibit 1 to the Complaint in *Settles* I (hereinafter, "Bodycam Videos"). A copy of the CD disc filed as Exhibit 1 to the Complaint in *Settles* I has been manually filed as an exhibit to this Motion. *See* Bodycam Videos (manually filed as **Exhibit B**

---

[1] These latter claims were brought pursuant to R.C. 2307.60, which provides a civil remedy for the victim of a criminal act.

and incorporated by reference herein).[2] The events described in Ptl. Malak's and Ptl. Pitts'
Counterclaim in *Settles* I (as supported by the Bodycam Videos) are briefly recounted here.

At approximately 11:35 p.m. on the night of January 23, 2020, Cleveland resident Jeff
Trimble ("Trimble") sat in the drive-through lane of the CVS Pharmacy on Turney Road in
Garfield Heights, Ohio. *Settles* I Counterclaim at ¶ 13. While waiting for his medication in the
drive-through lane, Trimble saw a man standing behind his vehicle observing him through the
rear-view mirror. *Id.* at ¶ 14. That man was Settles. *Id.* at ¶ 15.

As Trimble would later describe to Ptl. Jarzembak, "I think he was looking to see what I
looked like through my mirror, like to see … if he could handle me." *Id.* at ¶ 16. Trimble's
suspicion that Settles was planning on attacking him was confirmed when Settles suddenly
rushed the passenger side of Trimble's car, grabbed the door handle, and tried to rip it open
without any explanation. *Id.* In response to Settles' attempt to rip open his passenger side door,
Trimble laid down on his car horn and motioned for Settles to get away from the vehicle. *Id.* at ¶
19. While Settles was getting away from the CVS – and fearing that Settles might try to, in
Trimble's words, "carjack somebody else," – Trimble called Garfield Heights 911 and reported
that Settles had "rushed around and tried to rip open my passenger door" while he waited in the
CVS drive-through lane. *Id.* at ¶ 21.

The 911 operator who took Trimble's call alerted Ptl. Malak and Ptl. Pitts to Trimble's
complaint and described Settles' clothing and appearance to the officers. *Id.* at ¶ 22. As they
drove their police cruisers along Turney Road, Ptl. Malak and Ptl. Pitts saw a man wearing a

---

[2] The manually-filed CD disc containing the Bodycam Videos has six separate video files. Each file is identified
with the last name of the officer whose bodycam footage it contains. When citing to the Bodycam Videos in this
Memorandum, Defendants will identify the particular video file they are referring to by the name of the officer and
the time frame of the events depicted (e.g., Gall Bodycam Video at 0:07-0:12).

green hoodie matching Settles' description. *Id.* at ¶ 23. In response, Ptl. Malak and Ptl. Pitts turned on their overhead lights and pulled up behind Settles. *Id.*

At approximately 11:40 p.m., Ptl. Malak got out of his cruiser and attempted to get Settles' attention. Malak Bodycam Video at 0:01-0:25. Despite Malak's repeated commands to "stop," Settles continued to walk away. *Id.* Ptl. Malak followed Settles and repeatedly ordered him to stop until Settles turned around and acknowledged Ptl. Malak's commands. *Id.* Upon reaching Settles, Ptl. Malak informed Settles that he was being detained and escorted Settles to the hood of his police cruiser for a pat-down inspection. *Id.*

In preparation for the pat-down, Ptl. Malak directed Settles to place his hands on the hood of the police cruiser and spread his legs. Malak Bodycam Video at 0:25-0:35. Settles initially resisted spreading his legs, which prompted Ptl. Malak to repeat his command to "spread your legs" and to use his own feet to move Settles' legs apart. *Id.* As Ptl. Malak attempted to spread Settles' legs for a pat down inspection, Ptl. Pitts held Settles' right hand and wrist down on the hood of the police cruiser. *Id.*

As Ptl. Malak attempted to spread Settles' legs and Ptl. Pitts held Settles' right hand down on the police cruiser hood, Settles began to tense up and wriggle his wrist. Malak Bodycam Video at 0:32-0:40. Settles then tried to raise his right hand, prompting Ptl. Pitts to order Settles to put his hands behind his back. *Id.* In an attempt to obtain compliance with this directive, Ptl. Pitts grabbed the back of Settles' arm and tried to maneuver it behind Settles' back for handcuffing. *Id.*

Ignoring Ptl. Pitts' command to place his hands behind his back, Settles dislodged his right arm from Ptl. Pitts' grasp. *See* Pitts Bodycam Video at 0:05-0:15. After losing control of

Settles' right arm, Ptl. Pitts immediately grabbed the sleeve of Settles' hoodie and pulled Settles to the right and down to the ground while attempting to conduct a leg sweep. *Id.*

After they hit the ground with Settles, Ptl. Pitts and Ptl. Malak repeated their commands for Settles to place his hands behind his back and stop resisting. Settles did not comply. After Ptl. Pitts and Ptl. Malak commanded, "hands behind your back!" at least four times, Ptl. Malak warned, "you're gonna get tased!" Malak Bodycam Video at 0:45-0:50. Nonetheless, Settles continued to resist and failed to comply with the officers' repeated commands to put his hands behind his back. *Id.*

After their verbal commands failed to obtain compliance, Ptl. Malak and Ptl. Pitts disengaged from Settles and deployed their Tasers in probe mode. Malak Bodycam Video at 0:48-0:52. Ptl. Malak's and Ptl. Pitts' Taser deployments had little effect on Settles. *Id.* After being tased, Settles rolled onto his back and reached for his waistband with his right hand. *Id.* at 0:50-0:52. Ptl. Malak and Ptl. Pitts responded by repeatedly ordering Settles to get on his stomach. *Id.* at 0:52-0:55. In response, Settles attempted to stand up and swung his fists, striking Ptl. Malak. *Id.* at 0:55-1:00; *see also Settles* I Counterclaim at ¶¶ 46-48 (still shots of Ptl. Malak's bodycam video showing Settles standing up and striking Ptl. Malak). Ptl. Pitts responded to Settles' attack on Ptl. Malak by deploying his Taser to Settles' right shoulder in drive-stun mode. *Id.* One again, this Taser deployment had little apparent effect on Settles.

Eventually, Lt. Vargo arrived on-scene to assist Ptl. Malak and Ptl. Pitts. Because Settles continued to struggle with and resist Plt. Malak and Ptl. Pitts, Lt. Vargo applied his body weight to Settles' legs in an attempt to restrain Settles on his stomach so Ptl. Malak and Ptl. Pitts could secure Settles' hands behind his back. *See Settles* I Counterclaim at ¶ 50 (still shot from Sgt.

Gall's Bodycam Video showing Lt. Vargo trying to restrain Settles' legs while Settles grabs Ptl. Malak's uniform and gear).

Lt. Vargo was followed on-scene by GHPD Sgt. William Gall ("Sgt. Gall"). As Sgt. Gall arrived on scene, his body worn camera captured footage of Settles punching Ptl. Malak in the face, fracturing Ptl. Malak's nasal bone and maxilla on impact. *See Settles I* Counterclaim at ¶ 52 (still shot from Sgt. Gall's Bodycam Video showing Settles' right fist swinging up at Ptl. Malak's face); Gall Bodycam Video at 0:08-0:12 (note the audible "smack" as Settles' right first swings up and hits Ptl. Malak in the face, breaking his nose).

Because Settles continued to resist and was still not complying with officers' commands to place his hands behind his back, Sgt. Gall deployed his Taser in drive-stun mode. Gall Bodycam Video at 0:17-0:20. Sgt. Gall's Taser deployment had no noticeable effect on Settles, who continued to resist officers' attempts to place Settles' hands behind his back. *Id.* at 0:21-0:30. At this point, GHPD Patrolman Brian Regovich ("Ptl. Regovich") arrived on-scene to assist Ptl. Malak, Ptl. Pitts, Sgt. Gall, and Lt. Vargo. *See* Regovich Bodycam Video at 0:01-0:20. Only after Lt. Vargo's hold on Settles' legs prevented Settles from moving any further were Ptl. Malak, Ptl. Pitts, Ptl. Regovich, Sgt. Gall, and Lt. Vargo finally able place Settles' hands behind his back and cuff them in place. Vargo Bodycam Video at 2:05-2:40.

Ultimately, five officers were needed to restrain Settles and to place his hands behind his back. Two of those officers – Ptl. Malak and Ptl. Pitts – sustained significant injuries as a result of Settles' violent resistance. Specifically, Plt. Malak sustained a nasal bone fracture, right hand strain, and maxilla (i.e., jawbone) fracture. *See Settles* I Counterclaim at ¶¶ 58-61. Ptl. Pitts also sustained a right-hand contusion, right wrist strain, abrasion of his right index finger, and right knee contusion. *Id.* Settles, on the other hand, stated that he "felt just fine" and bragged, "***I had***

*fun with it, I was trying to teach you all a lesson, but I had fun with it*." Vargo Bodycam Video at 7:25-8:00.

Settles reacted to Ptl. Malak's and Ptl. Pitts' Counterclaim in *Settles* I by filing the above-captioned civil action, referred to hereinafter as "*Settles* II." *Settles* II alleges that by filing their pending Counterclaim in *Settles* I, Ptl. Malak and Ptl. Pitts retailed against Settles for filing his Complaint in violation of the First Amendment of the United States Constitution and 42 U.S.C. § 1983. Although the City of Garfield Heights is not a party to the Counterclaim in *Settles I*, *Settles* II alleges that the City remains liable for the officers' "retaliatory" conduct because it is represented by the same attorneys and "was aware of, directed, participated in, coordinated, and/or encouraged the decision to file the counterclaims." *Settles* II Complaint at ¶ 28.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Civil claims initiated by a government official do not give rise to actionable First Amendment retaliation when the claims asserted are supported by probable cause, defined as the "reasonable belief" that there is "a chance" the official's civil claims "may be held valid upon adjudication." In *Settles* I, Ptl. Malak and Ptl. Pitts filed a Counterclaim against Settles for assault, battery, obstruction of official business, and resisting arrest. Each of these claims is supported by body camera footage showing Settles fighting with and striking Ptl. Malak and Ptl. Pitts during the course of his arrest and admitting that he wanted to "teach [the police] a lesson." Has Settles plausibly alleged that Ptl. Malak's and Ptl. Pitts' Counterclaim lacks probable cause?

2.  To hold Ptl. Malak and Ptl. Pitts liable for First Amendment retaliation, Settles must first show that the officers violated clearly established law by asserting their Counterclaims in *Settles* I. No decision of the Supreme Court of the United States or the Sixth Circuit Court of Appeals holds that police officers may not counterclaim against a civil rights plaintiff for injuries suffered during the course of an arrest. Did the filing of Ptl. Malak's and Ptl. Pitts' Counterclaim in *Settles* I violate clearly established law such that they are deprived of qualified immunity?

## SUMMARY OF THE ARGUMENT

In what appears to be a knee-jerk reaction to the assertion of factually supported and legally sound counterclaims against him in his underlying lawsuit for excessive force, Plaintiff Kenta Settles has filed this action claiming that the City of Garfield Heights and two of its employed police officers – Patrolman Michael Malak and Patrolman Robert Pitts – have engaged in prohibited First Amendment Retaliation simply because they exercised their legal right – and duty – to assert non-frivolous compulsory counterclaims.

At the onset, it is necessary to recognize that Settles failed to attach Plt. Malak's and Ptl. Pitts' Counterclaim in *Settles* I as an exhibit to his Complaint in *Settles* II. Nor did Settles attach his Complaint from *Settles* I, which included (as Exhibit 1 thereto) the Bodycam Videos depicting the interaction between Settles and the Garfield Heights Police Department on January 23, 2020. Nevertheless, and because these documents are incorporated by reference in the *Settles* II Complaint, they have been filed as exhibits to this Motion to Dismiss and are properly before the Court.

In light of the Bodycam footage incorporated in the *Settles* II Complaint and manually filed in support of this Motion, this action should be dismissed for at least two reasons. First, a government official's counterclaim cannot give rise to an actionable claim for First Amendment retaliation if it is supported by "probable cause." This is defined as a "reasonable belief that there is a chance that a claim may be held valid upon adjudication." In this case, the Bodycam Videos are more than sufficient to establish probable cause for Ptl. Malak's and Ptl. Pitts' Counterclaims for assault, battery, obstruction of official business, and resisting arrest. These videos show – among other things – Settles ignoring officers' commands to get on his stomach and put his hands behind his back, swinging his fists and striking officers, and graphically punching Ptl.

Malak in the face, fracturing Ptl. Malak's nose and jawbone on impact and causing him to bleed profusely. After Settles was finally subdued (with the help of no less than five officers), he bragged about his violent resistance: "***I had fun with it … I was trying to teach you all a lesson, but I had fun with it***."

Based on the Bodycam Videos alone, this Court can conclude that Ptl. Malak and Ptl. Pitts instituted their Counterclaim against Settles with probable cause – a very low bar indeed. That being the case, Settles' First Amendment retaliation claim fails as a matter of law and should be dismissed as against all Defendants.

Additionally, Ptl. Malak and Ptl. Pitts are entitled to qualified immunity for the assertion of their compulsory Counterclaims. Neither the Supreme Court of the United States nor the Sixth Circuit Court of Appeals has ever held that a police officer violates a citizen's First Amendment right to access the courts by asserting a counterclaim in the context of a civil rights lawsuit – much less a counterclaim supported by probable cause. Because the alleged right that Settles accuses Ptl. Malak and Ptl. Pitts of violating is not clearly established by governing caselaw, Ptl. Malak and Ptl. Pitts are entitled to qualified immunity.

<u>**ARGUMENT**</u>

**I.**     <u>**In Ruling on Defendants' Motion to Dismiss, this Court Considers Plaintiff's Well-Pleaded Factual Allegations and Any Documents Incorporated by Reference in Plaintiff's Complaint.**</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.2007). However, the court

8

"need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Com'n Antitrust Litigation*, 583 F.3d 896, 903 (6th Cir.2009) (citations omitted).

Although a motion to dismiss is typically limited to the four corners of the plaintiff's complaint, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997) (*quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied," as Settles has done here. *Id.* Defendants have therefore filed – as exhibits to this Motion – copies of Settles' Complaint, the Bodycam Videos attached as Exhibit 1 to Settles' Complaint, and Ptl. Malak's and Ptl. Pitts' Counterclaim in *Settles* I. Each of these documents is incorporated by reference in Settles' Complaint in the above-captioned matter. *See Settles* II Compl. (Doc #: 1) at ¶¶ 7, 19 (expressly incorporating the *Settles* I Complaint – which includes the Bodycam Videos as an exhibit – and Ptl. Malak's and Ptl. Pitts' *Settles* I Counterclaim by reference).

II.   **Ptl. Malak's and Ptl. Pitts' Counterclaim in *Settles* I is Amply Supported by Probable Cause. As Such, Filing the Counterclaim Did Not Constitute Actionable First Amendment Retaliation in Violation of 42 U.S.C. § 1983.**

A.   **Civil Proceedings Initiated by Government Officials Do Not Give Rise to Actionable First Amendment Retaliation if Supported by Probable Cause.**

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019) (*citing Hartman v. Moore*, 547 U.S. 250, 256 (2006)). That being said, not every adverse action taken by a government official in response to a plaintiff's exercise of his

First Amendment rights is a constitutional tort. Instead, a claim for First Amendment retaliation will only lie when "non-retaliatory grounds are […] insufficient to provoke the adverse consequences." *Id.* Accordingly, the Supreme Court has consistently held that First Amendment claims for retaliatory arrest and prosecution are defeated by the presence of probable cause justifying the government's action. *See id.* at 1725 (holding that absent a showing of no probable cause, "a retaliatory arrest claim fails."); *Hartman*, 547 U.S. at 258 ("In an action for malicious prosecution after an acquittal, a plaintiff must show that the criminal action was begun without probable cause for charging the crime in the first place.").

Neither the Supreme Court nor the Sixth Circuit have specifically addressed a First Amendment claim for "retaliation by counterclaim." *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1298 (11th Cir.2019) (observing that only the Second, Fourth, and Eighth Circuits had previously addressed First Amendment claims for retaliation based on a government official's filing of a civil lawsuit or counterclaim).[3] That being the case, Defendants submit that this Court should look to the Eleventh Circuit's decision in *DeMartini v. Town of Gulf Stream* as the most recent circuit court decision addressing allegations of retaliatory civil litigation under 42 U.S.C. § 1983.

*DeMartini* arose from a civil RICO action filed by the Town of Gulf Stream, Florida (hereinafter, "the Town") against a Town resident and several associates who had "pummeled

---

[3] In a different context, the Supreme Court has held that the NLRB may not enjoin an employer's civil lawsuit against its employee as an unfair labor practice – *even if the lawsuit is motivated by a desire to retaliate against the employee for protected activity under the NLRA. See Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("The filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the Act."). The *Bill Johnson's* Court therefore held that the NLRB "may not halt the prosecution of a state-court lawsuit, *regardless of the plaintiff's motive*, unless the suit lacks a reasonable basis in fact or law." *Id.* at 748 (emphasis added). Lower courts have applied this holding to retaliation claims predicated on employer counterclaims in the context of federal anti-discrimination, family medical leave, and wage and hour litigation. *See Rosania v. Taco Bell of America, Inc.*, 303 F.Supp.2d 878, 886-87 (N.D.Ohio 2004) (recognizing that to constitute a retaliatory filing, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits").

the town with nearly 2,000 public records requests, many of them frivolous, with no intention of actually reviewing the results." *DeMartini*, 942 F.3d at 1282. The Town alleged that if it failed to timely respond to the requests, the defendants would file frivolous lawsuits in an effort to extort unreasonable monetary settlements. *Id.* After expending significant funds to defend against thousands of frivolous records requests and dozens of related lawsuits, the Town engaged outside counsel to file a federal civil RICO claim against the individuals and entities who instigated the requests. *Id.* at 1284-85.

After the Town's RICO lawsuit was dismissed for failure to state a claim, Denise DeMartini (one of the defendants to the Town's RICO lawsuit) filed suit against the Town for First Amendment retaliation under 42 U.S.C. § 1983. *DeMartini*, 942 F.3d at 1287. Like Settles here, DeMartini claimed that the Town's civil RICO action was filed in retaliation for her First Amendment-protected conduct. *Id.*

Drawing on the Supreme Court's caselaw analyzing First Amendment claims for retaliatory criminal prosecution and arrest (including *Hartman* and *Nieves*), the Eleventh Circuit affirmed the district court's dismissal of DeMartini's lawsuit on the grounds that "***the presence of probable cause will generally defeat a plaintiff's § 1983 First Amendment retaliation claim predicated on an underlying civil lawsuit, or counterclaim for that matter***." *DeMartini*, 942 F.3d at 1306 (emphasis added). The Eleventh Circuit defined "probable cause" in this context as the "reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Id.* at 1300–01 (*quoting Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62–63 (1993)). "This standard, which requires less certainty than probable cause as defined in the criminal context, is not a high bar to meet." *Id.*

Applying this rule, the *DeMartini* court held that the Town had probable cause for its underlying RICO suit even though the case had been dismissed on the pleadings. *Id.* at 1301-1303. Insofar as the Town had made viable (if ultimately unsuccessful) arguments for extending RICO to cover the defendants' scheme of serving frivolous public records requests and extorting unreasonable settlements through enforcement suits, the Eleventh Circuit held that the Town's lawsuit was supported by probable cause and that DeMartini's retaliation claim failed as a matter of law. As the Eleventh Circuit concluded, "***Just as a citizen may have the right to sue the government, the government likewise has the right, and duty, to engage in legitimate responsive litigation to defend itself against such challenges***." *Id.* at 1304 (emphasis added).[4]

**B.** **Based on the Bodycam Videos Incorporated in Plaintiff's Complaint, it is "Reasonable" to Believe There is a "Chance" Ptl. Malak's and Ptl. Pitts' Counterclaims "May Be Held Valid" Upon Adjudication.**

Applying *DeMartini's* probable cause requirement – as derived from Supreme Court precedent governing analytically similar claims for retaliatory prosecution and arrest – Settles' First Amendment claim fails. As demonstrated by the Bodycam Videos attached to Plaintiff's Complaint in *Settles* I (and incorporated by reference in his Complaint in *Settles* II) Ptl. Malak's and Ptl. Pitts' allegations are supported by a "reasonable belief that there is a chance that [their counterclaims for assault, battery, obstruction of official business, and resisting arrest] may be held valid upon adjudication," *DeMartini*, 942 F.3d at 1300–01. This much is confirmed by the following facts, which can be verified with reference to the Bodycam Videos incorporated in Plaintiff's Complaint:

---

[4] This duty is arguably heightened in the context of a compulsory counterclaim, which is waived if not asserted in response to the plaintiff's complaint. *See* Fed. R. Civ. P. 13(a)(1) ("A pleading **must state** as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.") (emphasis added); *see also Painter v. Harvey*, 673 F.Supp. 777 (W.D.Va.1987), *aff'd,* 863 F.2d 329 (4th Cir.1988) (holding that police officer's counterclaims for libel and slander in plaintiff's underlying excessive force case were compulsory counterclaims).

- After being tased and ordered to get on his stomach, Settles ignored officers' commands, stood up, swung his fists, and struck Ptl. Malak in the chest. *See Settles I* Counterclaim at ¶¶ 45-47; Malak Bodycam Video at 0:55-1:00.

- Subsequently, Settles punched Ptl. Malak directly in the face. This can be seen – *and heard* – on Sgt. Gall's bodycam video. *See Settles I* Counterclaim at ¶ 52 (incorporating a still shot from Sgt. Gall's Bodycam Video showing Settles' right fist swinging up at Ptl. Malak's face); Gall Bodycam Video at 0:08-0:12 (note the audible "smack" as Settles' right first swings up and hits Ptl. Malak in the face, breaking his nose).

- Settles continued to wrestle Ptl. Malak by grabbing his uniform and gear. *See* Gall Bodycam Video at 0:12-0:15 (showing Settles' right arm wrapped around and grabbing Ptl. Malak's torso).

- As a result of being punched by Settles in the face, Ptl. Malak began to bleed profusely from his nose. *See Settles* I Counterclaim at ¶¶ 59-62 (still shots of Ptl. Malak's fractured nose and Settles' hoodie stained with Ptl. Malak's blood); Vargo Bodycam Video at 2:35-2:45 (Ptl. Malak states his nose is bleeding and Ptl. Pitts tries to offer assistance); Pitts Bodycam Video at 1:28-1:35 (same).

- Immediately after Settles was subdued, Ptl. Malak reaffirmed that he had been punched in the face by Settles – thereby belying any claim that Malak "lied" about this injury only because he was sued by Settles *six months later*. *See* Gall Bodycam Video at 1:25-1:35.

- Ptl. Pitts likewise reported (on video) that Settles had struck him in the leg, and following the arrest drove himself to Marymount Hospital for treatment. *See* Gall Bodycam Video at 5:50-6:55 (Ptl. Pitts describes his and Ptl. Malak's injuries to Sgt. Gall immediately following Settles' arrest – during his discussion, Sgt. Gall confirms that he heard Settles punch Malak in the face as he arrived on-scene). Again, this footage shows that the injuries complained of in Ptl. Malak's and Ptl. Pitts' Counterclaim were contemporaneously reported within minutes of Settles' arrest – not fabricated six months later to "retaliate" against Settles for filing a civil rights lawsuit.

- For his part, Settles bragged about fighting with the officers. In Settles' own words, "***I had fun with it … I was trying to teach you all a lesson, but I had fun with it***." *See Settles* I Counterclaim at ¶ 62; Vargo Bodycam Video at 7:25-8:00.

These facts are more than sufficient to establish probable cause for Ptl. Malak's and Ptl. Pitts' civil counterclaims for assault, battery, obstruction of official business, and resisting arrest.

13

"An assault in tort is the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Hunt v. City of Toledo Law Dept.*, 881 F.Supp.2d 854, 884 (N.D.Ohio 2012). The Bodycam Videos in this case show multiple instances where Settles attempted to touch Ptl. Malak and Ptl. Pitts in an offensive manner. *See* Malak Bodycam Video at 0:55-1:00 (showing Settles standing up after being tased and swinging his hands at Ptl. Malak); Gall Bodycam Video at 0:07-0:12 (showing Settles swinging his right fist up at Ptl. Malak's face); *see also Settles* I Counterclaim at ¶ 52 (still shot from Sgt. Gall's Bodycam Video showing the same).

Likewise, a claim for battery requires the plaintiff to show "an intentional, nonconsensual touching." *Hunt*, 881 F.Supp.2d at 884. As shown in the above-cited Bodycam Videos, Settles not only attempted to strike, but did strike Ptl. Malak and Ptl. Pitts in an offensive manner. As a result, Ptl. Malak's nose began to bleed profusely. Ptl. Pitts also reported to Sgt. Gall that Settles had struck him in the leg. *See* Gall Bodycam Video at 5:50-6:55.

Ptl. Malak and Ptl. Pitts have also brought claims under R.C. 2307.60 to recover for three distinct criminal acts perpetrated by Settles during his arrest: assault, obstruction of official business, and resisting arrest.[5] First, Ohio's criminal assault statute provides that "no person shall knowingly cause or attempt to cause physical harm to another or to another's unborn" and "no person shall recklessly cause serious physical harm to another or to another's unborn." R.C. 2903.13(A) & (B). While this offense is ordinarily a first degree misdemeanor, it is a fourth-degree felony "if the victim of the offense is a peace officer […], while in the performance of their official duties." R.C. 2903.13(C)(5). For the reasons given above, it is reasonable to believe

---

[5] Note, a criminal conviction is not required to sustain a civil claim for criminal acts under R.C. 2307.60. *See Gonzalez v. Spofford*, 8th Dist. Cuyahoga No. 85231, 2005-Ohio-3415, ¶ 27 ("a criminal conviction of the crime is not a condition precedent to civil liability.").

there is a chance the trier of fact may conclude that Settles struck Ptl. Malak and/or Ptl. Pitts and knowingly (or recklessly) caused them to suffer physical harm.

Next, a conviction for obstruction of official business under R.C. 2921.31 requires proof of "(1) the performance of an unprivileged act (2) with the purpose of preventing, obstructing or delaying the performance by a public official of an authorized act within his official capacity (3) which hampers or impedes the public official in the performance of his lawful duties." *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005); *see also Phillips v. Blair*, 786 Fed.Appx. 519, 528 (6th Cir.2019) (holding that an arrestee's "physical struggle constitutes an affirmative act supporting a lawful arrest for obstruction."). Here, the Bodycam Videos show Settles engaged in an active (and violent) struggle against five police officers prior to being handcuffed, which resulted in Plt. Malak and Ptl. Pitts suffering multiple injuries that are documented on the Bodycam Videos. This active resistance impeded the officers from investigating Jeff Trimble's 911 call and support a finding of probable cause for Ptl. Malak's and Ptl. Pitts' claim for civil liability under R.C. 2307.60.

Finally, R.C. 2921.33 provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." In this case, one need not look past Settles' own statement that he "had fun" during his fight with the officers and "was trying to teach you all [i.e., the police] a lesson." *See* Vargo Bodycam Video at 7:25-8:00. This is tantamount to an admission that Settles resisted arrest. *See, e.g.*, *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir.2015) (holding that a civil rights plaintiff who "admitted [...] that he tried to prevent [the officer] from handcuffing him [...] conceded that he resisted arrest."). The encounter was certainly not "fun" for Ptl. Malak and Ptl. Pitts, who, as described above, sustained numerous physical injuries as a result of Settles' active resistance.

Despite the overwhelming evidence supporting Ptl. Malak's and Ptl. Pitts' Counterclaims, this Court need not decide whether they will ultimately prevail. Rather, the test here is whether it is "**reasonable**" to believe "that there is a **chance** that [the counterclaims] **may be held valid** upon adjudication." *DeMartini*, 942 F.3d at 1300–01 (emphasis added). This low threshold is undoubtedly satisfied by the facts shown on the Bodycam Videos incorporated in Plaintiff's Complaint. Because Ptl. Malak's and Ptl. Pitts' Counterclaims in *Settles* I are supported by probable cause, Settles' First Amendment retaliation claim fails as a matter of law and should be dismissed as against all Defendants.

### III.    There is No Clearly Established Right to Be Free From a Viable Counterclaim Filed by Government Officials in a Civil Rights Action. Accordingly, Ptl. Malak and Ptl. Pitts Are Entitled to Qualified Immunity.

In addition to being barred by the presence of probable cause, Plaintiff's Complaint in *Settles* II fails as against Ptl. Malak and Ptl. Pitts under the doctrine of qualified immunity. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* To defeat qualified immunity, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735; *see also Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991) (holding that "[t]he ultimate burden of proof is on [plaintiff] to show that [defendants] are not entitled to qualified immunity.").

In this case, Settles alleges that Ptl. Malak and Ptl. Pitts violated his First Amendment right to petition the courts for redress of grievances by filing a counterclaim against him. For the reasons given above, Ptl. Malak's and Ptl. Pitts' Counterclaim is amply supported by probable

cause. Accordingly, it cannot give rise to a First Amendment retaliation claim as a matter of law. *See DeMartini*, 942 F.3d at 1306 ("the presence of probable cause will generally defeat a plaintiff's § 1983 First Amendment retaliation claim predicated on an underlying civil lawsuit, or counterclaim for that matter.").

Additionally, the Ptl. Malak and Ptl. Pitts did not violate any "clearly established" constitutional right by filing their Counterclaim. As explained by the Supreme Court, "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S.Ct. 1765, 1774 (2015). "In determining whether a right was clearly established, [the Sixth Circuit] look[s] first to decisions of the Supreme Court, then to our own precedents, and then to decisions of other courts of appeal." *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 869 (6th Cir.2020). In conducting this inquiry, "the Supreme Court has 'repeatedly' warned lower courts not to define the right at 'a high level of generality.'" *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 508 (6th Cir.2012). Accordingly, court decisions must proscribe an officer's conduct "at the appropriate level of generality—a reasonably particularized one" for it to be deemed a violation of "clearly established" law. *Id.* at 509.

Defendants submit that the appropriate level of generality for defining the alleged constitutional offense in this case is as follows: *is it clearly established that police officers sued by an arrestee for using excessive force cannot file a counterclaim against the arrestee for injuries sustained by the officers during the course of his arrest*? Undersigned counsel's research has uncovered no case standing for such a proposition. Even if the inquiry were to be generalized

further – for example, *is it clearly established that a government official cannot file a viable counterclaim against a civil rights plaintiff* – the answer would still be "no." To the contrary, courts have expressly held "***[t]here is no clearly established right to be free from a counterclaim filed by a government official***." *Venable v. Keever*, 263 F.3d 162, 2001 WL 803565, *1 (5th Cir.2001) (unpublished table decision) (emphasis added).[6]

Indeed, courts routinely allow police officer counterclaims to proceed without even questioning whether such claims are "retaliatory." *See, e.g., Driscoll v. Schmitt*, 649 F.2d 631 (8th Cir.1981) (affirming jury verdict and award of compensatory damages to police officer on his counterclaim against civil rights plaintiff); *Graham v. Davis*, 880 F.2d 1414, 1419 (D.C.Cir.1989) (reinstating officer's counterclaim for assault and battery and instructing that the district court should "offset" the judgments "against each other" if the jury found in favor of the plaintiff *and* the counterclaiming officer); *Davis v. White*, 794 F.3d 1008, 1011 (8th Cir.2015) (reinstating counterclaims brought by officer whose nose was broken by arrest suspect); *Anton v. Lehpamer*, 534 F.Supp. 239, 243 (N.D.Ill.1982) (denying civil rights plaintiff's motion to dismiss officer's counterclaim for assault); *Smith v. City of New York*, 611 F.Supp. 1080, 1095 (S.D.N.Y.1985) (declining to dismiss defendant police officers' counterclaims in an excessive force case where the plaintiff argued that asserting such claims was beyond the city attorney's statutory authority and constituted a conflict of interest).

The District of Connecticut put it best in *Bates v. McKeon*:

> Sound public policy also supports allowing police officers injured in the performance of their duty a cause of action against those who intentionally assault them. It is common knowledge that police officers as a group are frequently sued for alleged wrongful conduct. Can it be seriously suggested that the civil law ought not to recognize the possibility that police officers can ever be the victims of wrongful conduct? Surely not. * * * There is no general rule of civil law that,

---

[6] The *Venable* court also found that the plaintiff's appeal advancing the contrary proposition was "without arguable merit and is frivolous." *Venable* at *2.

18

on the one hand, subjects police officers to liability for the wrongful use of force, but, on the other hand, prohibits police officers from asserting a claim against an assailant. * * * *In sum, the law does not require that in a court of law a police officer be relegated to the position of a sitting duck*.

650 F.Supp. 476, 481 (D.Conn.1986) (emphasis added).[7]

If nothing else, these cases stand for the proposition that police officers are well within their rights to assert counterclaims for an arrestee's tortious conduct and that such claims do not violate any clearly established constitutional right.

It is true that prior to the Eleventh Circuit's decision in *DeMartini*, three other circuits had addressed § 1983 First Amendment retaliation claims predicated on a retaliatory civil lawsuit or counterclaim. *See Greenwich Citizens Comm., Inc. v. Ctys. of Warren & Wash. Indus. Dev. Agency*, 77 F.3d 26 (2d Cir. 1996) (alleged retaliatory counterclaim); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422 (8th Cir. 1986) (alleged retaliatory counterclaim); *Bell v. Sch. Bd. of Norfolk*, 734 F.2d 155 (4th Cir. 1984) (alleged retaliatory civil declaratory judgment action). None of these cases involve counterclaims by police officers arising from injuries sustained during an arrest. Moreover, "all three cases were decided long before the [Supreme Court's] probable cause decisions" in *Hartman* and *Nieves*. *DeMartini*, 942 F.3d at 1298. Even so, "each of the three circuits gave some consideration to whether the underlying civil action was frivolous in deciding whether the § 1983 plaintiff had shown the requisite causation between the defendant's retaliatory animus and the plaintiff's injury." *Id.* Accordingly, these cases do not "clearly establish" that a police officer cannot assert viable counterclaims

---

[7] Plaintiff's counsel apparently overlooked these authorities. *See* Shaffer, Cory, *Garfield Heights cops countersue man they tased, punched and kicked during controversial arrest*, CLEVELAND.COM (July 15, 2020), *available at* https://www.cleveland.com/court-justice/2020/07/garfield-heights-cops-countersue-man-they-tased-punched-and-kicked-during-controversial-arrest.html#:~:text=CLEVELAND%2C%20Ohio%20%2D%2D%20Two%20Garfield,a%20lawsuit%20of%20their%20own. (quoting Plaintiff's counsel, Jeremy Tor, Esq., as stating that Ptl. Malak's and Ptl. Pitts' Counterclaim is "unprecedented," and further stating, "We've never seen a case in which police officers turn around and sue a citizen who stands up to enforce his civil rights.").

against a civil rights plaintiff for injuries he has sustained during the course of an arrest (at least absent a showing of patent frivolity). As discussed at length *supra*, the compulsory Counterclaims asserted by Ptl. Malak and Ptl. Pitts are anything but frivolous.

Because there is no clearly established law proscribing the assertion of a viable counterclaim by a police officer injured during the course of an arrest, Settles' Complaint should be dismissed as against Ptl. Malak and Ptl. Pitts with prejudice.

## CONCLUSION

Pursuant to the argument and authorities cited herein, Defendants respectfully move this Honorable Court for an order dismissing Plaintiff's Complaint with prejudice.

Dated: July 29, 2020        Respectfully submitted,

/s/ *Daniel J. Rudary*
Daniel J. Rudary (0090482)
Justin M. Lovdhal (0096958)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH 44308
Phone:       (330) 253-5060
Fax:          (330) 253-1977
E-mail:       djrudary@bmdllc.com
              jmlovdahl@bmdllc.com

Robert A. Hager (0040196)
**BRENNAN, MANNA & DIAMOND, LLC**
200 Public Square, Ste. 3270
Cleveland, OH 44114
Telephone:    (216) 658-2155
Facsimile:     (216) 658-2156
Email:        rahager@bmdllc.com

Timothy J. Riley (0042007)
Office of the Law Director
City of Garfield Heights
5407 Turney Road

20

Garfield Heights, OH 44125
Telephone:    (216) 475-0824
Facsimile:    (216) 475-1124
Email:        triley@garfieldhts.org

*Counsel for Defendants the City of Garfield
Heights, Michael Malak, and Robert Pitts*

<u>**LOCAL RULE 7.1(F) CERTIFICATION**</u>

I hereby certify that the foregoing above-captioned case pending in the United States District Court, Northern District of Ohio, Eastern Division, is as of this filing unassigned, and that the foregoing Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss complies with the requirements of Local Rule 7.1(f).

/s/ *Daniel J. Rudary*
*Counsel for Defendants the City of Garfield*
*Heights, Michael Malak, and Robert Pitts*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 29th day of July, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Daniel J. Rudary*
*Counsel for Defendants the City of Garfield*
*Heights, Michael Malak, and Robert Pitts*

4846-8264-9029, v. 1