**FILED**

OCT 0 8 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **KENTA SETTLES,** | ) | **CASE NO.**    **1:20 CV 1288** |
| | ) | **1:20 CV 1631** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| | ) | |
| **MICHAEL MALAK, et al.,** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on the Motion for Summary Judgment filed by

Defendants, Patrolman Michael Malak, Patrolman Robert Pitts, Patrolman Brian Regovich,

Patrolman Rob Jarzembak, Sergeant William Gall, Lieutenant Todd Vargo, and the City of

Garfield Heights. (Docket #60.)

## I.     Factual and Procedural Background.[1]

On the evening of January 23, 2020, Plaintiff, Kenta Settles, was walking down Turney

Road in Garfield Heights, Ohio, when he was approached and stopped by Patrolman Michael

Malak of the City of Garfield Heights Police Department ("Ptl. Malak"). Ptl. Malak had been

---

[1]

    The facts as stated in this Memorandum Opinion and Order are taken from the
Parties' submissions. Those material facts that are controverted and supported by
deposition testimony, affidavit, or other evidence are stated in the light most favorable to
the non-moving Party.

sitting in his police cruiser when the City of Garfield Heights Police Dispatcher radioed that a

black male, wearing dark clothing, had just attempted to "pry open the door" of a car waiting in

the drive-thru of a nearby CVS.  This particular CVS had closed to customers approximately an

hour earlier following an armed robbery at that location, but the drive-thru remained open.

(Declaration of Ptl. Michael Malak ("Malak Decl.") at Paragraphs 5-8; Declaration of Patrolman

Robert Pitts ("Pitts Decl.") at Paragraphs 5-7.)

The car waiting in the CVS drive-thru was driven by Jeffrey Trimble.  Mr. Trimble

testified during his deposition as follows:

> I was about four cars back and I was on the phone with my mother and I could see in my side-view mirror a gentleman walking from the store towards the drive-thru line and he stopped maybe about five feet in back of my car but up against the wall of the store and he was just looking around and he would look at my car, and I told my mother, honestly because I've had other people ask me for money when I'm going in and out of the store, "I think somebody's about to ask me for some money," but it was cold out and my windows were up and I really wasn't worried and he was just standing there up against the wall and but I did notice he was, you know, he kept looking at my car, looking at my car and I'm thinking any second he's going to come up and ask me something and just all of a sudden he like straightened up and he looked one last time around and he bolted and I mean like a very fast walk from the wall around my car to the passenger side.  It was really quick.
>
> And before I even knew it, he was yanking on my door handle and the first thing I thought of was I just laid on the horn and I held it for a good five seconds and when I let off, he like pointed down the street like north down Turney like he was saying something, he was asking a question and I just, I used an expletive, I said I don't give an F.  Get the F away from my car because there was no mistake he was trying to get into my car.  He wasn't trying to strike up a conversation.  He could have came to my driver's side window for that.
>
> And when he started kept trying to talk, I hit the horn one more time and he turned around and very briskly – he didn't run, but he very briskly walked north down Turney.

(Deposition of Jeffrey Trimble ("Trimble Depo.") at pp. 13-14.)

Mr. Trimble believed he had been the victim of an attempted carjacking; was fearful that the man in the drive-thru might attempt to carjack someone else; and, called 911 to report the incident, stating, "some guy came up behind my vehicle, stood there for a minute and then just rushed around and tried to rip open my passenger door." (Id. at pp. 22-23.) Mr. Trimble informed the Police Dispatcher that the suspect was a black male, wearing a green hoodie, and that he was presently headed down Turney Road.

### Mr. Settles' Deposition Testimony.

Earlier on the evening in question, Mr. Settles had gone to his brother's house to pick up hair clippers. (Deposition of Kenta Settles ("Settles Depo.") at pp. 12-13.) It was Mr. Settles' son's birthday the next day, and he planned to cut his son's hair. (Id.) Mr. Settles missed his bus; was on foot; and, decided to stop at CVS on his way home to pick up his prescription. (Id. at pp. 14-15.) Unable to enter CVS, Mr. Settles stood in the drive-thru lane. During his deposition, Mr. Settles stated as follows:

> I missed my bus stop. I was hearing voices because I'm a paranoid schizophrenic and I know I had a refill 'scription at CVS so I was going to fill my refilled prescription at CVS because I'm pretty sure that you can do that at any location as long as it's in the database.

> While I was standing at the 24 hour drive-thru window because I don't have a vehicle because I was in a accident prior to me getting out of the hospital and me telling you that, I didn't want to startle the guy. I'm not that small of a guy to just be standing behind somebody car, you know, so I just went to the side of the window to let him know that hey, I was picking up my prescription. Don't be alarmed. That's it. He overreacted. I left.

(Settles Depo. at p. 15.)

Mr. Settles does not remember touching Mr. Trimble's car. (Id.) He also does not think

-3-

Mr. Trimble heard him explain why he was standing by the car, and could not hear anything Mr. Trimble said, or if Mr. Trimble said anything at all. (Id.) Mr. Settles stated it looked like Mr. Trimble "was reaching for something, which kind of startled [him], so [he] walked away because [he] didn't want to get shot or anything." (Id. at p. 17.) He does not remember Mr. Trimble hitting the horn of his car. (Id.)

### Garfield Heights Police Respond to the Dispatcher's Call.

Shortly after receiving the Police Dispatcher's call, Ptl. Malak saw a man walking down Turney Road and believed he may be the man the Police Dispatcher had described. Ptl. Malak testified that because of the earlier robbery of the same CVS, he was on alert that the suspect described by the Police Dispatcher could be armed and dangerous. (Malak Decl. at Paragraph 5.)

Ptl. Malak turned on his overhead lights and pulled up behind Mr. Settles. Mr. Settles testified he did not notice the lights from the police cruiser behind him or realize he was being followed by a police officer. (Settles Depo. at p. 23.) Ptl. Malak parked his police cruiser, and began to approach Mr. Settles on foot, yelling "Come here! Hey! Police." (Malak Decl. at Paragraphs 9-12; Malak Body Camera Video.) Mr. Settles stopped and turned around, maintaining what Ptl. Malak describes as a "bladed stance." (Id. at Paragraphs 18-21.) Mr. Settles states that as Ptl. Malak got closer, he "stopped and turned to see who was yelling;" "did not realize it was a police officer until Malak got closer;" and, that once he realized, he complied by raising both hands, which were empty. (Docket #87 at p. 4; Settles Depo. at pp. 23-24.) Patrolman Robert Pitts ("Ptl. Pitts") arrived as Ptl. Malak was making his initial contact with Mr. Settles. (Deposition Transcript of Ptl. Robert Pitts ("Pitts Depo.") at p. 19.)

When Ptl. Malak reached Mr. Settles on the sidewalk, he took hold of Mr. Settles' left

-4-

arm and told Mr. Settles he was "being detained." Mr. Settles asked why he was being detained and Ptl. Malak did not answer. (Settles Depo. at p. 25.) Ptl. Malak escorted Mr. Settles to the hood of his police cruiser for a pat-down. Mr. Settles complied. According to Ptl. Malak's testimony, Mr. Settles did not pull away or resist being escorted to the hood of the cruiser. (Malak Depo. at p. 148.) Mr. Settles testified he gave his hands to Ptl. Malak, believing Ptl. Malak was going to handcuff him. (Settles Depo. at p. 25.) Mr. Settles asserts that despite his compliance, Ptl. Malak shoved him against the hood; kicked his left leg out to the side; twisted his right arm behind his back without warning or a chance to give Ptl. Malak his arm; and, that he was taken to the ground with a leg sweep. (Settles Depo. at pp. 28; 38-39.) Sergeant William Gall ("Sgt. Gall"), Patrolman Brian Regovich ("Ptl. Regovich"), and Lieutenant Todd Vargo ("Lt. Vargo"), arrived on scene during Mr. Settles' arrest and each was physically involved in the arrest to some extent.

Citing the Officers' deposition testimony, Mr. Settles states he had not threatened the Officers; had not shoved, lunged or put his hands on the Officers; had not fled from the Officers or given indication he intended to flee; and, that he had no weapons and no illicit drugs or alcohol in his system. (Malak Depo. at pp. 22-23, 27-328, 144, and 147; Pitts Depo. at pp. 28-30.) The details of what transpired over the next several minutes are in dispute. Mr. Settles alleges that he was "slammed" to the pavement by Ptl. Malak; repeatedly punched in the face by Ptl. Pitts; repeatedly tasered by Ptl. Malak and Pitts; repeatedly kneed and/or kicked by Ptl. Pitts; tasered multiple times by Ptl. Malak, Ptl. Pitts and Sgt. Gall; placed in a reverse headlock by Ptl. Malak; and, pinned to the ground by Ptl. Malak, Ptl. Regovich, and Lt. Vargo, without any justification. Defendants do not deny that these things happened, but argue that Mr. Settles

actively resisted arrest and struggled with the Officers, justifying their use of force.  Mr. Settles maintains that he did not resist and points to police body camera video in which he can be heard responding "I ain't" when the Officers were yelling at him to "stop resisting."  Mr. Settles alleges any non-compliance with the Officers commands (for instance, covering his face with his hands rather than putting his hands up when asked) was for self-protection, and not offensive in nature.

Ptl. Malak alleges to have suffered a broken nose and jawbone during the Mr. Settles' arrest, and alleges Mr. Settles intentionally punched him in the face twice.  Ptl. Pitts alleges to have suffered bruises and strains to his right hand, wrist and index finger, and a bruise to his right knee, during Mr. Settles' arrest.  Mr. Settles "does not dispute defensively swinging his arm during the fracas while on the ground" but stated during deposition that "he never had any intent on hitting the officer" and "never tried to assault anybody."  (Settles Depo. at p. 53.)  Mr. Settles testified that he felt "like [he] was going to die" and was "trying to protect [him]self to the best of [his] ability, but that was impossible because [the officers] had full control over the situation." (Id. at p. 54.)  Mr. Settles states in briefing, "the two strikes Malak claims Settles landed came after Settles, who was never told why the officers were detaining him in the first place, had been gratuitously slammed to the pavement, and subjected to repeated deadly punches to his face and head, repeated Taser deployments that sent 50,000 volts of electricity through his body and caused him to convulse," arguing that a jury could conclude he inadvertently struck Ptl. Malak or struck him in self-defense.  (Docket #87 at p. 14.)

In addition to the foregoing, Mr. Settles alleges that he was left in handcuffs, on his stomach and subject to compressive force, for longer than necessary, struggling to breathe.

-6-

Defendants argue Mr. Settles had no difficulty breathing and that Mr. Settles was only kept in the prone position long enough to be searched for weapons. While Mr. Settles remained handcuffed, on his stomach, and on the ground, Ptl. Malak called Mr. Settles "a fucking piece of shit." (Docket #87 at p. 21; Malak Depo. at p. 194; Malak Body Camera Video.) When Mr. Settles tried to speak, Ptl. Pitts shouted, "Shut up! Shut the fuck up! You have the right to remain silent. Anything you say can and will be used against you in the court of law." (Docket #87 at p. 22; Pitts Depo. at pp. 131-32; Vargo Body Camera Video.) Mr. Settles began crying, and Ptl. Malak called him a "poor baby" and an "asshole." (Docket #87 at p. 22; Vargo Body Camera Video.) When brought to his feet, Mr. Settles told Lt. Vargo he was confused by what had happened and asked "Was that fair?" Mr. Settles said to Lt. Vargo, "I had fun with it. I was trying to teach you a lesson, but I had fun with it." (Docket #87 at p. 22; Regovich Body Camera Video.) Lt. Vargo asked, "What do you mean you were trying to teach us a lesson?" (Id.) Mr. Settles responded, "Because I listened." (Id.)

There are police body camera videos of Mr. Settles' entire encounter with the police on the evening in question. However, the Parties offer very different interpretations of what is happening in the videos and why.

Patrolman Rob Jarzembak ("Ptl. Jarzembak") arrived on the scene after Mr. Settles was handcuffed but still on the ground, in the prone position, being searched by Lt. Vargo. (Declaration of Ptl. Rob Jarzembak ("Jarzembak Decl." at Paragraph 11.) After observing the scene and speaking with Ptl. Malak, Ptl. Jarzembak drove to the parking lot of a nearby Walgreens where Mr. Trimble was waiting. (Id. at Paragraph 16.) Ptl. Jarzembak confirmed the details of Mr. Trimble's story and drove Mr. Trimble to the scene of Mr. Settles' arrest. Mr.

-7-

Trimble positively identified Mr. Trimble as the man who he believed attempted to carjack him in the CVS drive-thru.  (Id. at Paragraphs 16-25.)

### Incident Report, Investigation and Criminal Charges.

Ptl. Jarzembak was assigned as the "reporting officer" relative to Mr. Settles' arrest, tasked with completing an Incident Report.  (Deposition of Ptl. Rob Jarzembak ("Jarzembak Depo.") at p. 95.)  Ptl. Jarzembak drove Mr. Settles to the hospital after his arrest and, despite engaging in some conversation, did not discuss the details of the arrest with Mr. Settles.  (Jarzembak Depo. at p. 82.)  Ptl. Malak and Pitts were also taken to the hospital to be treated for the injuries they allege to have sustained during the incident.  Ptl. Jarzembak interviewed Ptl. Malak and Pitts briefly at the hospital to gather information for the Incident Report.  (Jarzembak Depo. at p. 105.)

On January 24, 2020, Ptl. Malak signed, and the Garfield Heights Municipal Court issued, a Complaint and Affidavit, charging Mr. Settles with Assault Against a Police Officer, in violation of Ohio Rev. Code § 2903.13(C)(5), including the following description of the offense:

> Did knowingly cause or attempt to cause physical harm to a peace officer while in the performance of their official duties, to wit:
>
> While resisting arrest, and after administration of a CEW, Kenta Lamar Settles punched officer Malak in the face breaking his (Malak) nose and fracturing a facial bone (Malak)

(Docket #87-2.)

A second Complaint and Affidavit, signed by Ptl. Malak, and issued by the Garfield Heights Municipal Court on January 24, 2020, charged Mr. Settles with Resisting Arrest, in violation of Ohio Rev. Code § 2921.33, including the following description of the offense:

-8-

> Did, recklessly or by force, shall [sic] resist or interfere with a lawful arrest of the person or another person and, during the court of or as a result of the resistance or interference, cause physical harm to a law enforcement officer, to wit: Kenta Lamar Settles continued to resist arrest after being administered (2) CEW deployments and a single drive stun from a third CEW device. Settles fought with officers. Two officers sustained injuries as a result.

(Docket #87-2.)

A third Complaint and Affidavit, signed by Ptl. Jarzembak, and issued by the Garfield Heights Municipal Court on January 24, 2020, charged Mr. Settles with Disorderly Conduct in violation of Ohio Rev. Code § 2917.11, including the following description of the offense:

> Recklessly caused inconvenience, annoyance, or alarm by making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person and the offender persisted in disorderly conduct after reasonable warning or request to desist. To Wit: Kenta Lamar Settles repeatedly pulled on the locked door handle of an occupied vehicle causing the driver to be fearful, and believing he was being car-jacked.

(Docket #56-4.)

Detective Pete Stroe ("Det. Stroe") of the Garfield Heights Police Department was not involved in Mr. Settles' arrest, but was chosen to investigate the incident. In his Affidavit, Det. Stroe states that he received the criminal Complaints and Affidavits executed against Mr. Settles by Sgt. Gall, Ptl. Malak and Ptl. Jarzembak, charging Mr. Settles with Assault Against a Police Officer, Resisting Arrest, and Disorderly Conduct. (Declaration of Det. Pete Stroe ("Stroe Decl.") at Paragraph 4.) Det. Stroe states that he conducted an investigation into the crimes alleged – including review of the body camera videos from the Officers involved in Mr. Settles' arrest; the Incident Report completed by Ptl. Jarzembak; and, the individual Supplements to the Incident Report and Use of Force Reports completed by Lt. Vargo, Sgt. Gall and Ptl. Regovich.

-9-

(Id. at Paragraph 6.)  Det. Stroe states he did not review any written statements from Ptl. Malak or Ptl. Pitts as part of his initial investigation because each was on leave and had not completed a written statement until February 11, 2020.  (Id. at Paragraph 7.)  Det. Stroe also reviewed Mr. Trimble's 911 call and written statement, and spoke to Mr. Trimble over the phone to confirm the details of his story.  (Id. at Paragraphs 8-9.)  Det. Stroe states that he attempted to obtain video surveillance of the CVS from the evening in question, but none was available.  (Id. at Paragraph 10.)

On January 24, 2020, following his investigation, Det. Stroe presented his findings to City of Garfield Heights Prosecutor Jeff Jerome, who then prepared charges against Mr. Settles for filing in the City of Garfield Heights Municipal Court.  (Id. at Paragraph 11.)  Following a probable cause determination by Magistrate Judge Jeff Short, the charges against Mr. Settles were bound over to the Cuyahoga County Court of Common Pleas.  (Id. at Paragraph 12.)  Det. Stroe's case file was transferred to the Cuyahoga County Prosecutor's Office.  (Id. at Paragraph 13.)  On January 27, 2020, Det. Stroe delivered all of the body camera video from the Officers involved in Mr. Settles' arrest to the Cuyahoga County Prosecutor's Office.  (Id. at Paragraph 16.)

On January 30, 2020, Det. Stroe testified before the Cuyahoga County Grand Jury via video link from the Garfield Heights Police Department, "summarizing the facts of the incident as [he] understood them based on the evidence previously reviewed as part of [his] investigation."  (Id. at Paragraph 17.)  Det. Stroe states he has no additional information regarding what other evidence may have been presented by the Prosecutor to the Grand Jury.  (Id.)  Mr. Settles was then indicted by the Cuyahoga County Grand Jury on two charges –

-10-

Felonious Assault, in violation of Ohio Rev. Code § 2903.11(A)(1), and Obstruction of Official

Business, in violation of Ohio Rev. Code § 2921.31(A). (Id. at Paragraph 20.)

On June 12, 2020, the Cuyahoga County Prosecutor dismissed all of the charges against

Mr. Settles without prejudice. (Id. at Paragraph 21.) Mr. Settles spent the entire time between

his arrest and the dismissal of the charges against him in jail.

## II.    Complaint/Counterclaims/Additional Complaint.

### A.    Mr. Settles Complaint in Case No. 1:20 CV 1288.

Mr. Settles filed his Complaint in this Court on June 11, 2020, Case No. 1:20 CV 1288,

amending his Complaint twice thereafter. Mr. Settles' Second Amended Complaint was filed on

April 5, 2021 (Docket #40), alleging as follows:

- A claim pursuant to 42 U.S.C. § 1983 against Defendants Malak, Pitts, Vargo, Gall, Regovich and Jarzembak for Excessive Use of Force in Violation of the Fourth and Fourteenth Amendments (First Claim for Relief);

- A claim pursuant to 42 U.S.C. § 1983 against Defendants Malak, Pitts, Vargo, Gall, Regovich and Jarzembak for False Arrest in Violation of the Fourth and Fourteenth Amendments (Second Claim for Relief);

- A claim pursuant to 42 U.S.C. § 1983 against Defendants Malak and Pitts for Unlawful/Unreasonable Search and Seizure in Violation of the Fourth and Fourteenth Amendments (Third Claim for Relief);

- A claim pursuant to 42 U.S.C. § 1983 against the City of Garfield Heights for Failure to Train and for Unconstitutional Customs, Policies and Practices causing Constitutional Violations (Fourth Claim for Relief);

- A State law claim for Assault and Battery against Defendants Malak, Pitts, Vargo, Gall and Regovich (Fifth Claim for Relief);

- A State law claim for Intentional Infliction of Emotional Distress against Defendants Malak, Pitts, Vargo, Gall and Regovich (Sixth Claim for Relief);

- A State law claim for False Arrest against Defendants Malak, Pitts, Vargo, Gall, Regovich and Jarzembak (Seventh Claim for Relief);

- A claim pursuant to 42 U.S.C. § 1983 against Defendants Malak, Pitts, Vargo, Gall and Jarzembak for Malicious Prosecution (Eighth Claim for Relief);

- A State law claim for Malicious Prosecution against Defendants Malak, Pitts, Vargo, Gall and Jarzembak (Ninth Claim for Relief);
- A claim pursuant to 42 U.S.C. § 1983 against Defendants Malak, Pitts, Gall, Vargo, Jarzembak and Regovich for Racially Discriminatory Use of Force in Violation of the Fifth and Fourteenth Amendments (Tenth Claim for Relief); and,
- A claim pursuant to 42 U.S.C. § 1983 against Defendants City of Garfield Heights for Unconstitutional, Racially Discriminatory Customs, Policies, and Practices Causing Constitutional Violations (Eleventh Claim for Relief).

**B.    Answer; Counterclaims of Defendants Malak and Pitts.**

On April 19, 2021, along with Defendants' Answer to Mr. Settles' Second Amended Complaint, Ptl. Malak and Pitts filed Counterclaims against Mr. Settles for Civil Assault and Civil Battery under Ohio Common Law (Counts I and II); Civil Liability for Criminal Acts – Assault, pursuant to Ohio Rev. Code §§ 2307.60 and 2903.13 (Count III); Civil Liability for Criminal Acts – Obstructing Official Business, pursuant to Ohio Rev. Code §§ 2307.60 and 2921.31 (Count IV); and, Civil Liability for Criminal Acts – Resisting Arrest, pursuant to Ohio Rev. Code §§ 2307.60 and 2921.33 (Count V).  These claims arise from the injuries Ptl. Malak and Pitts allege to have sustained during Mr. Settles' arrest.

**C.    Mr. Settles Complaint in Case No. 1:20 CV 1631.**

On July 23, 2021, Mr. Settles filed a separate Complaint against the City of Garfield Heights, Ptl. Malak and Ptl. Pitts, filed as Case No. 1:20 CV 1631.  In Case No. 1:20 CV 1631, Mr. Settles asserts a single claim for relief, against the City of Garfield Heights, Ptl. Malak and Ptl. Pitts, alleging Ptl. Malak and Pitts filed their Counterclaims against him in retaliation for filing his civil rights lawsuit, in violation of his rights under the First Amendment.

**III.    Defendants' Motion for Summary Judgment.**

On July 8, 2021, Defendants filed a Consolidated Motion for Summary Judgment.

(Docket #60.) On August 9, 2021, Mr. Settles filed his Brief in Opposition. (Docket #87.) On

August 18, 2021, Defendants filed their Reply Brief. (Docket #88.)

## IV. Abandoned Claims.

Defendants have indicated that they will not oppose summary judgment as to the

following claims:

- Mr. Settles' Third, Tenth, and Eleventh Claims for Relief as to all Defendants;
- Mr. Settles' First Claim for Relief as to Sgt. Gall only;
- Mr. Settles' Second Claim for Relief as to Sgt. Gall only;
- Mr. Settles' Fifth Claim for Relief as to Sgt. Gall only;
- Mr. Settles' Sixth Claim for Relief as to Sgt. Gall only;
- Mr. Settles' Seventh Claim for Relief as to Sgt. Gall only;
- Mr. Settles' Eighth Claim for Relief as to Lt. Vargo, Sgt. Gall, and Ptl. Jarzembak; and,
- Mr. Settles' Ninth Claim for Relief as to Lt. Vargo, Sgt. Gall and Ptl. Jarzembak.[2]

## V. Standard of Review.

Summary judgment is appropriate when the court is satisfied "that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." FED. R. CIV. P. 56(a). The burden of showing the absence of any such "genuine issue"

rests with the moving party:

---

2

    In Footnote 7 on p. 40 of his Opposition Brief, Mr. Settles states that he agrees that his Eighth and Ninth Claims for Relief (Malicious Prosecution) should be dismissed as to Defendants Vargo, Gall, Regovich and Jarzembak. However, Mr. Settles' Eighth and Ninth Claims for Relief, as set forth in his Second Amended Complaint, did not include Ptl. Regovich as a Defendant.

-13-

> [A] party seeking summary judgment always bears the initial responsibility of
> informing the district court of the basis for its motion, and identifying those portions
> of 'the pleadings, depositions, answers to interrogatories, and admissions on file,
> together with affidavits, if any,' which it believes demonstrates the absence of a
> genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" only if its resolution will

affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Determination of whether a factual issue is "genuine" requires consideration of the applicable

evidentiary standards. The court will view the summary judgment motion in the light most

favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. Ohio 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v.

Machulis*, 57 F.3d 476, 479 (6th Cir. Mich. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover,

if the evidence presented is "merely colorable" and not "significantly probative," the court may

decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations

omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce

evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't

of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995). FED. R. CIV. P. 56(e) states:

-14-

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is
> a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as

an automatic grant of summary judgment, where otherwise appropriate. *Id.*

As a general matter, the district judge considering a motion for summary judgment is to

examine "[o]nly disputes over facts that might affect the outcome of the suit under governing

law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it

weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole

function is to determine whether there is a genuine factual issue for trial; this does not exist

unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining

whether there is the need for a trial--whether, in other words, there are any genuine factual issues

that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party." *Anderson*, 477 U.S. at 250.

## VI.   Discussion.

### A.   Claims Brought Pursuant to 42 U.S.C. § 1983 for Use of Excessive Force and Failure to Intervene; 42 U.S.C. § 1983 and State Law for False Arrest; and, 42 U.S.C. § 1983 for Failure to Train/Unconstitutional Customs, Policies or Practices.

In order to prevail on a claim brought pursuant to § 1983, a plaintiff must establish by a

preponderance of the evidence that a person acting under the color of State law deprived him of

a right secured by the United States Constitution or the laws of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. Tenn. 2006). A violation of § 1983 must be intentional or knowingly committed in order to be compensable. A negligent or reckless deprivation is not sufficient. *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. Mich. 1999). Further, an injury caused by mere negligence, that does not rise to the level of a constitutionally protected interest, is not compensable under §1983. *See Collins v. City of Shaker Heights*, 503 U.S. 115 (1992).

Government officials are protected from liability for civil damages, including those that arise under §1983, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). To determine whether qualified immunity applies in a given case, we use a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, we determine whether the allegations give rise to a constitutional violation; and (2) we assess whether the right was clearly established at the time of the incident. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. Ohio 2012); see also *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)(quoting *Anderson v. Creighton*, 483 U. S. 635, 640 (1987)). We can consider these steps in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). However, "If there is no constitutional violation, then plaintiff's § 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment and does not need qualified immunity." *Marvin v. City*

-16-

*of Taylor*, 509 F.3d 234, 244 (6th Cir. Mich. 2007)(citing *Scott v. Harris*, 127 S. Ct. 1769, 1779 (2007)).

### 1. Excessive Force/Failure to Intervene – First Claim for Relief (Defendants Malak, Pitts, Vargo, Regovich and Jarzembak).

Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). This standard encompasses "a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. Ohio 2002) (citing *Graham*, 490 U.S. at 396). It "allow[s] for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The factors considered in assessing a Constitutional excessive force claim include the particular facts and circumstances of each case, the severity of the crime, the threat posed by the suspect, and whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of the particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "An officer should be entitled to qualified immunity if he made an objectively reasonable mistake as to the amount of force that was necessary under the circumstances with which he was faced." *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 175 (6th Cir. Mich. 2004) (citation omitted).

In order to establish an officer failed to intervene to protect him from alleged excessive force, Mr. Settles must prove that "the officer observed or had reason to know that the excessive force would be or was being used and that the officer had both the opportunity and the means to

prevent the harm  from occurring." *Smith v. City of Troy*, 874 F.3d 938, 945-46 (6th Cir. Ohio 2017)(citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. Ky. 1997)).

Questions of fact persist regarding Mr. Settles' arrest which preclude summary judgment on his Excessive Force claim, as there is sufficient evidence in dispute regarding whether Mr. Settles was actively resisting arrest by the Officers and, if resisting, whether the use of force against him was reasonable or a violation of Mr. Settles' Constitutional rights.  If unreasonable, only then can it be determined whether any of the Officers unlawfully failed to intervene to protect Mr. Settles.  Mr. Settles alleges, and there is evidence to corroborate, that he was forcibly pushed to the pavement, repeatedly punched in the head and face, and repeatedly shot with tasers.  Mr. Settles argues that he was not actively resisting arrest and that he was not given sufficient time to comply with the Officers' commands prior to their use of force.  Furthermore, Mr. Settles argues that any injuries suffered by Ptl. Malak and Pitts during his arrest were not the result of any intentional actions on his part.  Although there is body camera video, the entire incident unfolded over a matter of minutes and quickly became chaotic and difficult to disentangle.  A jury is better suited to review the facts in this case and make a determination as to the reasonableness of the Officers' actions under the circumstances.

Accordingly, Defendants' Motion for Summary Judgment is denied as to Mr. Settles' First Claim for Relief.

### 2.    False Arrest – Second and Seventh Claims for Relief. (Defendants Malak, Pitts, Vargo, Regovich and Jarzembak.)

In order to succeed on his False Arrest claims, Mr. Settles must prove that the police lacked probable cause to arrest him. *Burley v. Gagacki*, 834 F.3d 606, 613-14 (6th Cir. Mich.

-18-

2016). "An officer possesses probable cause when, at the moment the officer seeks the arrest, 'the facts and circumstances within the officer's knowledge and of which [he] had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the plaintiff had committed or was committing an offense.'" *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. Ky. 2015) (alterations omitted) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "If probable cause exists to arrest the suspect for any of the charged offenses, then the false arrest claim must fail." *Fineout v. Kostanko*, 780 F. App'x 317, 328 (6th Cir. Mich. 2019) (citing *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. Ohio 2005)).   Mr. Settles asserts his claim for False Arrest under both Federal and State law.

While unresolved questions persist relative to the alleged assault and resisting arrest charges arising from Mr. Settles' interaction with the Garfield Heights Police Officers, the question of whether the Officers had probable cause to arrest Mr. Settles in connection with his actions in the CVS drive-thru is amenable to resolution by the Court and answered in the affirmative.  The Officers arrested Mr. Settles, at least in part, based on the fact that he matched the description, provided by Mr. Trimble and the Garfield Heights Police Dispatcher, of the man who Mr. Trimble claimed had just tried to open his car door at CVS.  Mr. Settles was then positively identified by Mr. Trimble at the scene of the arrest.  Thus, the Officers had probable cause to arrest Mr. Settles.  *See Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. Mich. 1999). Accordingly, Defendants are entitled to summary judgment as a matter of law on Mr. Settles' Second and Seventh Claims for Relief.

### 3.    Failure to Train, Supervise, and for Unconstitutional Customs, Policies and Practices – Fourth Claim for Relief.
### (Defendant City of Garfield Heights.)

-19-

Mr. Settles is also pursuing a Fourth Amendment claim against the City of Garfield Heights, alleging the City of Garfield Heights failed to adequately train its Police Officers.  In his Brief in Opposition, Mr. Settles appears to have narrowed the scope of this claim to encompass only the allegation that the City of Garfield Heights failed to train its officers on prone restraint and compressive force, which resulted in an unconstitutional use of force during Mr. Settles' arrest.

Under § 1983, a municipality can only be held liable if the plaintiff demonstrates that the injury suffered was a direct result of the city's official policy or custom.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978); *Cummings v. City of Akron*, 418 F.3d 676, 684-85 (6th Cir. Ohio 2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  The inadequacy of police training only serves as a basis for § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Harris*, 489 U.S. at 388 (emphasis added).  As stated in *Harris*:

> The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy."  It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees.  But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 390.

Mr. Settles alleges that the City of Garfield Heights had/has no policy regarding the use

-20-

of prone restraint, citing testimony from Lt. Vargo, who has worked for the Garfield Heights

Police Department for over 20 years.  Lt. Vargo testified he does not know of any Garfield

Heights' policies on prone restraint, nor does he remember being trained by the City of Garfield

Heights regarding prone restraint or positional asphyxia.

However, in deposition testimony not cited by Mr. Settles, Lt. Vargo testified that he

knows what prone restraint is, and testified as follows with regard to positional asphyxia:

> I have heard of it.  I don't know a lot of details about it.  I know that it should be
> avoided.  That's something important to me, as soon as I'm able, within a
> reasonable amount of time, I try to alleviate that threat or the risk of that position.
> As soon as I reasonably could with the many, many things that were commanding
> my attention at the time, I got Kenta Settles out of that position that you are
> referring to.
>
> * * *
>
> I'm aware that a person should not be in that position any longer than necessary
> and that as soon as reasonably possible they should be gotten out of that position.
>
> * * *
>
> I've known since I started working at Garfield Heights that prone restraint should
> be avoided, and if somebody who is handcuffed is laying face down, that they
> should be moved out of that position as soon as reasonably possible, and in my
> opinion, I did my best to achieve that goal that night.

(Deposition of Lt. Todd Vargo ("Vargo Depo.") at pp. 163 and 165.)  Lt. Vargo testified that Mr.

Settles was in a prone restraint with his hands cuffed behind his back for two minutes.  Lt. Vargo

testified that he was positioned around Mr. Settles' legs and Ptl. Pitts was holding Mr. Settles by

the arm.  (Id. at p. 168.)

Further, Ptl. Pitts testified that he has received training on the dangers associated with

keeping someone in a prone restraint for an extended period of time.  (Pitts Depo. at pp. 84-85.)

Ptl. Pitts testified that he participated in "subject control classes" conducted by the City of

Garfield Heights; that the City of Garfield Heights has use of force and handcuffing policies; that

-21-

he believes it is acceptable to place someone in a prone position for handcuffing; and, that "once the lawful objective is completed and an individual is rendered to not possess any weapons or be any further risk to himself or other officers," the person should be taken off his or her stomach. (Id. at p. 87.)  With regard to "positional asphyxia, Ptl. Pitts testified, "If you are to leave an individual unsupervised on the ground in the prone position due to their position that they're in, it will actually cause them to asphyxiate." (Id. at p. 88.)  Officer Pitts testified that he had "heard that" there's an Executive Order in Ohio regarding prone restraint, but that he doesn't recall reading it.  Ptl. Pitts testified that he has been trained to not put someone in a prone position for a lengthy period of time; has been trained not to place weight on a person's body after he is handcuffed and face down on the ground; and, has been trained not to put weight upon a restrained individual's back, shoulder blades, shoulders, hands, waist, thighs and lower legs "for extended periods of time."  Ptl. Pitts stated that he was trained that such weight can create the risk of suffocation.  Ptl. Pitts stated that he has been trained to get suspects off their bellies once they're handcuffed "when it's safe to do so." (Id. at p. 89.)

As set forth above, Lt. Vargo and Ptl. Pitts both testified that they are familiar with the concepts of prone restraint and positional asphyxiation.  Both testified that they know that a handcuffed suspect should not be left on his stomach beyond the point that the subject is under control.  While questions of fact persist as to whether the Officers' acted reasonably and/or used excessive force during Mr. Settles' arrest (including the time he spent handcuffed in the prone position with Officers positioned on and/or around him), Mr. Settles has offered no evidence that the lack of a specific policy or focused training regarding prone restraint had any impact on the Officers' actions under the facts and circumstances in this case.  Accordingly, Defendants are

entitled to summary judgment as to Mr. Settles' Fourth Claim for Relief.

**B.     State Law Claims for Assault and Battery – Fifth Claim for Relief – and
Intentional Infliction of Emotional Distress – Sixth Claim for Relief.
(Defendants Malak, Pitts, Vargo and Regovich.)**

Along with his claims brought pursuant to Federal law, Mr. Settles alleges State law

claims for Assault and Battery and Intentional Infliction of Emotional Distress.  Pursuant to Ohio

Rev. Code § 2744.03(A)(6), employees of a political subdivision are immune from "a civil

action brought . . . to recover damages for injury, death, or loss to persons or property allegedly

caused by any act or omission in connection with a governmental or proprietary function," unless

the employee acted outside the scope of his employment, acted "with malicious purpose, in bad

faith, or in a wanton or reckless manner," or unless "liability is expressly imposed upon the

employee by a section of the Revised Code." Ohio Rev. Code § 2744.03(A)(6)(a)-(c).  The

provision of police services is a governmental function.  Ohio Rev. Code § 2744.01(C)(2)(a).

"Malicious purpose encompasses exercising 'malice,' which can be defined as the willful

and intentional design to do injury, or the intention or desire to harm another, usually seriously,

through conduct that is unlawful or unjustified." *Caruso v. State*, 136 Ohio App.3d 616, 620,

737 N.E.2d 563 (10th Dist. Ct. App. 2000) (citing *Jackson v. Butler Cty. Bd. of Cty. Comm'rs.*, 76

Ohio App.3d 448, 453-454, 602 N.E.2d 363 (12th Dist. Ct. App. 1991)).  An act is committed

recklessly if it is done "with knowledge or reason to know of facts that would lead a reasonable

person to believe that the conduct creates an unnecessary risk of physical harm and that such risk

is greater than that necessary to make the conduct negligent." *Caruso*, 136 Ohio App. 3d at 621

(citing *Hackathorn v. Preisse*, 104 Ohio App.3d 768, 771, 663 N.E.2d 384 (9th Dist. App.

1995)).

"Resolution of the state-law immunity issue is heavily dependent on the same disputed

material facts as the excessive-force determination under § 1983." *See Martin v. City of*

*Broadview Heights*, 712 F.3d 951, 963 (6th Cir. Ohio 2013). Mr. Settles' State law claims for

Assault and Battery and Intentional Infliction of Emotional Distress are inextricably intertwined

with his Excessive Force claim. Accordingly, Defendants' Motion for Summary Judgment is

denied as to Mr. Settles' Fifth and Sixth Claims for Relief.

### C. Malicious Prosecution Pursuant to 42 U.S.C. § 1983 and State Law – Eighth and Ninth Claims for Relief.
### (Defendants Malak and Pitts.)

Mr. Settles alleges that Ptl. Malak and Pitts "made, influenced, and/or participated in the

decision to prosecute him without probable cause by, among other things, writing materially

false, incomplete, and misleading incident reports and sworn affidavits" regarding the events of

January 23, 2020, causing him "to be indicted, have to defend himself against serious criminal

charges, and be jailed for nearly 5 months."

To succeed on this claim, Mr. Settles must prove four things: (1) that a criminal

prosecution was initiated against him and that the defendant "made, influenced, or participated in

the decision to prosecute," *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. Mich. 2010)

(alterations omitted) (quoting *Fox v. Desoto*, 489 F.3d 227, 237 (6th Cir. Ky. 2007)); (2) that

there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of a

legal proceeding, he suffered a deprivation of liberty apart from the initial seizure; and (4) that

the criminal proceeding was resolved in his favor. *Id.* at 308-09; *see also Fox*, 489 F.3d at 237.

Mr. Settles spent 5 months in jail after his arrest. The charges against him were eventually

dropped. The Court, therefore, must examine the remaining elements – whether Officers Malak

-24-

and Pitts "made, influenced, or participated in the decision to prosecute" and whether there was probable cause for the prosecution.

"Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." *Sykes*, 625 F.3d at 311 n. 9; see *Malley v. Briggs*, 475 U.S. 335, 344-45 n. 7 (1986) (internal quotation omitted) (construing § 1983 "against the background of tort liability," in which people are responsible for the "natural consequences" of their acts). Although Mr. Settles need not show that the officers influenced or participated with malice, "there must be some element of blameworthiness or culpability in the participation," that is, "truthful participation in the prosecution is not actionable." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. Tenn. 2015) (citing Sykes, 625 F.3d at 314). The most clear-cut way for a plaintiff to satisfy this prong is to show that the officer gave false testimony before a grand jury. *See Webb v. United States*, 789 F.3d 647, 663 (6th Cir. Ohio 2015). An officer can also influence or participate in the decision to prosecute by falsely prompting or urging a prosecutor's decision to bring charges in the first place. *See Id.* at 666.

Mr. Settles argues as follows:

> A jury could find that Officers Pitts and Malak supplied materially false information – i.e., that Settles was actively resisting the officers and assaulted Malak when he did neither – to the reporting officer, Jarzembak. Jarzembak's report contains the false claim that "Settles became combative" and contains the false statement that "when Ptl. Malak attempted to pat down the subject pushed away from the police vehicle and began struggling with the two officers." Incident Report, Garfield-001638. The report creates the false impression that Settles initiated the violence.

(Docket #87 at p. 4.)

In addition to the allegedly false information supplied to Ptl. Jarzembak, Mr. Settles also points to the Affidavits signed by Ptl. Malak which accused Mr. Settles of assault and resisting arrest. Mr. Settles argues the allegedly false information was ultimately provided to Det. Stroe who testified before the Grand Jury and that the Grand Jury's indictment of Mr. Settles on two felony charges – Felonious Assault and Obstructing Official Business – "mirrored Malak's affidavits and was supported by the false information Malak and Pitts provided to Jarzembak, which he in turn memorialized in the incident report." (Id. at p. 42.) Mr. Settles argues that there was no evidence to support the Felonious Assault and Resisting Arrest charges filed against him, and no probable cause to support the Felonious Assault or Obstructing Official Business charges by the Grand Jury.

Defendants argue that a Grand Jury indictment "conclusively determines the existence of probable cause." However, an exception to this rule applies when the indictment was obtained wrongfully by police officers who knowingly presented false testimony to the Grand Jury. *France v. Lucas*, 836 F.3d 612, 626 (6th Cir. Ohio 2016). Ptl. Malak and Pitts participated in the decision to prosecute to the extent their allegations of resisting arrest and assault served as the basis for Mr. Settles' indictment. Questions of fact persist, regarding whether Mr. Settles resisted arrest and assaulted Ptl. Malak, which bear directly on the question of whether the charges against Mr. Settles were the result of false statements made knowingly by the Officers. Accordingly, summary judgment is denied as to Mr. Settles' Eighth and Ninth Claims for Relief.

**D.      Mr. Settles' First Amendment Retaliation Claim against the City of Garfield Heights and Ptl. Malak and Pitt – Case No. 1:20 CV 1631.**

-26-

Mr. Settles alleges Defendants violated his right of access to the Courts, grounded in the First Amendment, by filing what he alleges were retaliatory Counterclaims in this case. Mr. Settles argues that an introductory paragraph in Defendants' Counterclaim, Paragraph 6, is evidence of Defendants' retaliatory motives. Paragraph 6 reads as follows:

> Unfortunately, and for motives that are beyond Ptl. Malak's and Ptl. Pitts' comprehension, Settles has thus far succeeded in propagating a misguided, incomplete, and one-sided narrative that has falsely portrayed Settles as the victim of unprovoked police brutality. In reality, and as developed herein, Settles is a repeat criminal offender whose violent resistence during a lawful investigation of reported criminal activity resulted in two officers sustaining significant injuries and being unjustifiably vilified in court filings and the media. That irresponsible and inflammatory narrative now gives way to the truth.

(Docket #42 at p. 28.) As additional evidence of an alleged retaliatory motive, Mr. Settles relies on the fact that the Counterclaims of Ptl. Malak and Pitts were filed by the same attorneys defending Mr. Settles' civil rights lawsuit on behalf of all Defendants; the fact that the City of Garfield Heights and/or their insurer is absorbing the cost of representation as to the Counterclaims; and, the fact that Ptl. Malak and Pitts have never filed this typed of Counterclaim under similar circumstances before.

Regardless of whether the filing of a counterclaim under these circumstances constitutes "State action" for purposes of Section 1983, which is questionable at best, there is no evidence to support a retaliation claim in this case. As stated by the Sixth Circuit in *King v. Zamiara*, 680 F.3d 686 (6th Circ. Mich. 2012):

> Subjective motivation appropriately enters the picture on a retaliation claim because our concern is with actions by public officials taken with the intent to deter the rights to free expression guaranteed under the First Amendment. *Bloch v. Ribar*, 156 F.3d 673, 681-82 (6th Cir. 1998) ("[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.") (internal

-27-

> quotation marks omitted). Thus, causation in retaliatory claims may really be
> considered a two-part inquiry: A plaintiff must show both (1) that the adverse
> action was proximately caused by an individual defendant's acts, *Siggers-El v.*
> *Barlow*, 412 F.3d 693, 702 (6th Cir. 2005), **but also (2) that the individual**
> **taking those acts was "motivated in substantial part by a desire to punish an**
> **individual for exercise of a constitutional right,"** *Thaddeus-X*, 175 F.3d at 386.

(*King*, 680 F.3d 686, 695. Emphasis added.) *See also Mental Disability Law Clinic v. Hogan*,

853 F. Supp. 2d 307 (E.D. N.Y. 2012)(citing *Greenwich Citizens Comm. v. Counties of Warren*

*& Washington Indus. Dev. Agency*, 77 F3d 26 (2d Cir. 1996)).

Pursuant to Fed. R. Civ. P. 13(a)(1)(A), "A pleading must state as a counterclaim any

claim that – at the time of its service – the pleader has against an opposing party if the claim . . .

arises out of the transaction or occurrence that is the subject matter of the opposing party's

claims." The Counterclaims filed by Ptl. Malak and Pitts in this case are compulsory

counterclaims and Mr. Settles has failed to offer evidence to suggest that Defendants' motivation

for filing their Counterclaims was a desire to punish Mr. Settles for filing his Civil Rights

lawsuit. Paragraph 6 of Defendants' Counterclaim – presumably drafted by Counsel – does

nothing more than introduce and summarize Defendants' position in this case. The identity of

Counsel, payment for legal services, or the fact that the Officers may not have filed this type of

counterclaim before are likewise insufficient to establish a "substantial desire to punish" in this

case. Counterclaims, by their very nature, are responsive. Responsive, without more, does not

equate to retaliatory. Defendants responded to Mr. Settles' initial Complaint in this case and, as

permitted under the Federal Rules of Civil Procedure, filed Counterclaims. There is no proof

that the Counterclaims were filed with an intent to punish Mr. Settles or deter Mr. Settles from

exercising his right to acess the courts.

For the foregoing reasons, Defendants are entitled to summary judgment as a matter of

law on Mr. Settles' First Amendment Retaliation claim. Case No. 1:20 CV 1631 is hereby terminated.

## VII. Conclusion.

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants, Patrolman Michael Malak, Patrolman Robert Pitts, Patrolman Brian Regovich, Patrolman Rob Jarzembak, Sergeant William Gall, Lieutenant Todd Vargo, and the City of Garfield Heights (Docket #60), is hereby GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

### Case No. 1:20 CV 1288.

- Summary judgment is hereby entered as to all Defendants on Mr. Settles' Second, Third, Fourth, Seventh, Tenth, and Eleventh Claims for Relief;
- Summary Judgment is hereby entered in favor of Sgt. Gall as to Mr. Settles' First Claim for Relief;
- Summary Judgment is hereby entered in favor of Sgt. Gall as to Mr. Settles' Fifth Claim for Relief;
- Summary Judgment is hereby entered in favor of Sgt. Gall as to Mr. Settles' Sixth Claim for Relief;
- Summary judgment is hereby entered in favor of Lt. Vargo, Sgt. Gall and Ptl. Jarzembak on Mr. Settles' Eighth Claim for Relief; and,
- Summary judgment is hereby entered in favor of Lt. Vargo, Sgt. Gall and Ptl. Jarzembak on Mr. Settles' Ninth Claim for Relief.

The City of Garfield Heights and Sgt. Gall are terminated as a Defendants in Case No. 1:20 CV 1288.

### Case No. 1:20 CV 1631.

Summary Judgment is hereby entered in favor of the City of Garfield Heights and Ptl. Malak and Pitts on Mr. Settles' sole claim in Case No. 1:20 CV 1631. Case No. 1:20 CV 1631 is hereby terminated.

**Remaining Claims/Trial.**

The remaining claims in Case No. 1:20 CV 1288 are set for trial on December 14, 2021

at 8:30 a.m. in Courtroom 15A:

- Mr. Settles' First Claim for Relief against Defendants Malak, Pitts, Vargo, Regovich and Jarzembak;
- Mr. Settles' Fifth Claim for Relief against Defendants Malak, Pitts, Vargo and Regovich;
- Mr. Settles' Sixth Claim for Relief against Defendants Malak, Pitts, Vargo and Regovich;
- Mr. Settles' Eighth Claim for Relief against Defendants Malak and Pitts; and,
- Mr. Settles' Ninth Claim for Relief against Defendants Malak and Pitts.

IT IS SO ORDERED.

DONALD C. NUGENT
Senior United States District Judge

DATED: October 8, 2021

-30-